J-S60021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LOUIS DALE | |
| Appellant | No. 3565 EDA 2014 |

Appeal from the PCRA Order December 2, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001184-2010

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 17, 2015**

Louis Dale appeals *pro se* from the order entered on December 2, 2014, in the Court of Common Pleas of Delaware County, denying him relief, without a hearing, on his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq*.  In this timely appeal, Dale raises eight issues for our review.[1]  The Honorable Kevin F. Kelly has authored an

---

[1] The issues are: (1) error in failing to appoint counsel for the instant appeal; (2) error in failing to consider Dale's subsequent petition raising ***Alleyne v. United States***, 133 S.Ct. 2151 (2013), as a continuation of the instant petition rather than as a separate petition; (3) error in dismissing the petition without a hearing; (4) PCRA counsel ineffectiveness for failing to comply with the dictates of ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988; (5) PCRA counsel ineffectiveness for failing to develop and investigate Dale's PCRA claims; (6) pre-trial counsel ineffectiveness for failure to investigate possible defense or to file pre-trial motions, including a motion to suppress; (7) trial counsel ineffectiveness for failure to object to misstatements of
*(Footnote Continued Next Page)*

exhaustive, 79 page, Pa.R.A.P. 1925(a) opinion that comprehensively addresses Dale's issues and which demonstrates the errors and fallacies of those issues. Accordingly, we affirm on the basis of that sound decision. In light of the thoroughness of the PCRA court opinion, we refer the reader to pages 1-10 of that decision for the factual and procedural history. We simply note that Dale was convicted by a jury of the armed robbery of Darren Brooks on December 4, 2009, and that the police were led to Dale due to his suspected involvement in another recent robbery.

Regarding Dale's substantive claims[2]:

Issue one, regarding the failure to appoint counsel for this appeal, is discussed at pages 10-13;

Issue two, regarding *Alleyne v. United States*, is discussed at pages 13-23;[3]

*(Footnote Continued)* ──────────────

evidence by Commonwealth counsel and failure to call alibi witnesses; and (8) trial counsel ineffectiveness for failure to object to misstatements by Commonwealth counsel during closing argument.

[2] We address the claims in the order Dale raised them. The PCRA reordered the issues, addressing issue three, last. Additionally, the PCRA court opinion addresses nine issues rather than eight because the PCRA court broke issue six, regarding claims of pre-trial ineffectiveness into two numbered issues, as there were two lawyers involved in pre-trial activities.

[3] Regarding Dale's claim that his sentence is illegal per the United States Supreme Court decision in *Alleyne*, Dale has argued he was subjected to a mandatory minimum sentence pursuant to 42 Pa.C.S. § 9712 regarding sentences committed for offenses committed with firearms. The PCRA court, however, correctly noted his mandatory sentence was based upon his status as a recidivist. *See* 42 Pa.C.S. § 9714(a)(1); Certificate of Imposition of
*(Footnote Continued Next Page)*

Issue three, regarding dismissal of the instant petition without a hearing, is discussed at pages 73-74;

Issues four and five, regarding PCRA counsel ineffectiveness, are discussed at pages 23-31;

Issue six, regarding the failure to file pre-trial motions and explore defenses, is addressed at pages 31-49;

Issues seven and eight, regarding the failure to object to misstatements at trial and in closing argument are addressed at pages 49-72, 75-77.

Our standard of review for the denial of relief of a PCRA petition is well settled:

> On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

***Commonwealth v. Lewis***, 63 A.3d 1274, 1278 (Pa.Super. 2013) (citation omitted).

_(Footnote Continued)_ ─────────────

Judgment of Sentence, 9/28/2010. The trial court conducted a pre-trial colloquy with Dale, regarding his decision to go to trial, that clearly explained the nature of the mandatory sentence he was facing. **See** N.T. Trial, 7/13/2010, at 3-15. During this same colloquy, Dale stated he was satisfied with counsel's representation and counsel had done everything requested of him. These statements, although not under oath, support the PCRA court's conclusions rejecting Dale's claims of pre-trial ineffective assistance of counsel.

Our review of the certified record demonstrates the PCRA court's denial of Dale's petition, without a hearing, is supported by the record and free from legal error. Accordingly, the order of December 2, 2014, denying Dale relief is affirmed.

Order affirmed. Parties are directed to attach a copy of the PCRA court's June 17, 2015, opinion in the event of further proceedings.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2015

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :  NO. 1184-10

          :

      v.       :

          :

LOUIS DALE        :

John F.X. Reilly, Esquire – Deputy District Attorney for the Commonwealth
Louis Dale – *Pro Se*

## OPINION

Kelly, J.             **Date: June 17, 2015**

  A criminal complaint was filed on or about February 4, 2010, by Detective Joseph Houghton, Yeadon Borough Police Department, charging Louis Dale (hereinafter referred to as "Defendant" or "Dale"), *inter alia*, with Robbery[1] and Possessing Instruments of Crime.[2]

  A preliminary hearing was held on February 19, 2010, before the Magisterial District Court during which the prosecution moved to amend its criminal complaint to add the allegation of Criminal Conspiracy[3] to commit all other already charged offenses. N.T. 2/19/10, pp. 20-22. After the Commonwealth's presentation of evidence, the presiding Magisterial District Judge held the Defendant for trial court purposes as to all prosecuted offenses, including the amended Criminal Conspiracy[4] charge. N.T. 2/19/10, pp. 27-30.

  Defendant Dale was formally arraigned before the trial court on or about March 18, 2010, at which time the Office of the Delaware County District Attorney lodged against him Criminal

---

[1] 18 Pa.C.S. § 3701.
[2] 18 Pa.C.S. § 907.
[3] 18 Pa.C.S. § 903.
[4] *Id.*

Informations averring, *inter alia*, as follows: Information A – Robbery[5] and Information F – Possessing Instruments of Crime.[6] *See* Criminal Informations.

The Delaware County Public Defender's Office determined that at bar the Defendant was eligible for its professional services, and Defendant Dale was thus initially represented before the trial court by Assistant Public Defender, Arthur J. Modesti, Esquire. On May 6, 2010, private counsel, Scott L. Kramer, Esquire, entered his appearance on behalf of the Defendant and assumed for the balance of proceedings before this court, including trial and sentencing, Defendant Dale's stewardship.

A jury trial commenced on July 13, 2010, before this court and concluded the next day (July 14, 2010). N.T. 7/13/10 and 7/14/10. As to all prosecuted charges,[7] Information A – Robbery,[8] a felony of the first degree, and Information F – Possessing Instruments of Crime,[9] a first degree misdemeanor, the jury found Defendant Dale guilty. N.T. 7/14/10, pp. 111-16. *See also* Jury's Verdict.

Confirming its oral, of-record, notice offered in open court immediately subsequent to the verdict's recording, the Commonwealth lodged written notice on or about July 28, 2010, further memorializing, *inter alia*, its invocation of the Sentences for Second and Subsequent Offenses mandatory minimum sentencing provisions material to Information A – Robbery.[10] *See* Commonwealth's Sentencing Notice. *See also* 42 Pa.C.S. § 9714.

---

[5] 18 Pa.C.S. § 3701.
[6] 18 Pa.C.S. § 907.

[7] Immediately prior to the commencement of the trial's evidentiary presentation, without objection, the Commonwealth, of-record, withdrew the balance of its past filed Criminal Informations. N.T. 7/13/10, pp. 15-17.

[8] 18 Pa.C.S. § 3701.
[9] 18 Pa.C.S. § 907.
[10] 18 Pa.C.S. § 3701.

A sentencing hearing was held on September 28, 2010, before this court. N.T. 9/28/10. Defendant Dale's prior, first degree felony Robbery[11] conviction was established via the stipulation of counsel and unsolicitedly acknowledged of-record by the Defendant. N.T. 9/28/10, pp. 13-14, 17-18. *See also Commonwealth v. Dale*, No. 5936-96 – Delaware County. Finding the prosecution had sufficiently established the applicability of the Sentences for Second and Subsequent Offenses' mandated provisions,[12] the court in the aggregate imposed a sentence of ten (10) through twenty (20) years incarceration to be served at a state correctional institution.[13] N.T. 9/28/10, pp. 20-28. *See also* Certificate of Imposition of Judgment of Sentence. No post-sentence motions were lodged.

On September 27, 2010, trial counsel, Mr. Kramer, lodged a Petition for Leave to Withdraw Appearance. Immediately following the imposition of sentence on September 28, 2010, by order also of that date (September 28, 2010), the court granted this withdrawal petition. *See* Order dated September 28, 2010.

Defendant Dale on or about October 27, 2010, filed a counseled Notice of Appeal from his sentencing judgment with the Superior Court of Pennsylvania. *See* Superior Court No. 2944 EDA 2010. Contemporaneous with his lodging of the appeal notice, Assistant Public Defender Patrick J. Connors, Esquire entered his office's appearance on behalf of Defendant Dale. *See* Entry of Appearance dated October 27, 2010.

Via order of November 16, 2010, this court directed the Defendant's attorney to file of-record a Concise Statement of Matters Complained of on Appeal. *See* Order dated November

---

[11] *Id.*

[12] 42 Pa.C.S. § 9714(a)(1).

[13] No objection was raised by defense counsel at sentencing relevant to the adequacy of the Commonwealth's mandatory minimum sentencing invocation notice. N.T. 9/28/10, pp. 3-4. *See* 42 Pa.C.S. § 9714(d).

3

16, 2010. *See also* Pa.R.A.P. 1925(b). Responding to this order (November 16, 2010), Defendant Dale's lawyer timely filed on December 3, 2010, a Statement of Matters Complained advancing the sole issue that the trial court erred when it failed during *voir dire* to inquire of the venire whether any of the panelists would be unable to follow the instruction of law that the jury's verdict must be unanimous. *See* Statement of Matters Complained, dated December 3, 2010.

This court on or about February 4, 2011, lodged its opinion concluding the Defendant's appellate error assignment had been waived. *See* Trial Court Opinion, pp. 4-5.

The Superior Court by opinion dated September 9, 2011, affirmed the Defendant's sentencing judgment finding that the singular claim advanced on direct appeal had been waived. *See* Superior Court No. 2944 EDA 2010, Opinion, p. 2.

Defendant Dale on or about October 11, 2011, filed with the Pennsylvania Supreme Court a Petition for Allowance of Appeal. *See* Supreme Court No. 765 MAL 2011.

The Supreme Court of Pennsylvania per its order dated January 5, 2012, denied the Defendant's allowance of appeal petition. *See* Supreme Court No. 765 MAL 2011, Order dated January 5, 2012. The Defendant did not lodge with the United States Supreme Court a Petition for Writ of Certiorari.

Defendant Dale on or about March 28, 2012, filed *pro se* his initial Petition for Post Conviction Collateral Relief. *See* Defendant's Petition. This original collateral petition being his first PCRA pleading the Defendant for such purposes was entitled to counsel's assistance. *See Commonwealth v. Perez,* 799 A.2d 848, 851-52 (Pa.Super. 2002) *citing Commonwealth v. Guthrie,* 749 A.2d 502, 504 (Pa.Super. 2000); *Commonwealth v. Ferguson,* 722 A.2d 177, 179 (Pa.Super. 1998); and *Commonwealth v. Hampton,* 718 A.2d 1250, 1252-53 (Pa.Super. 1998).

*See also Commonwealth v. Ramos*, 14 A.3d 894, 895-96 (Pa.Super. 2011) and *Commonwealth v. Luckett*, 700 A.2d 1014, 1016 (Pa.Super. 1997). Per order dated March 30, 2012, and consistent with his request for counsel's stewardship, Henry DiBenedetto Forrest, Esquire was for this initial collateral action appointed to represent the Defendant. *See* Defendant's Petition, p. 31 and Order dated March 30, 2012.

Subsequent to his requesting and being granted an extension of time within which to lodge of-record an amended PCRA pleading, appointed counsel in compliance with the dictates of *Commonwealth v. Finley*, 481 U.S. 551, 558-59, 107 S.Ct. 1990, 1995 (1987), *Commonwealth v. Turner*, 518 Pa. 491, 495, 544 A.2d 927, 928-29 (1988) and *Commonwealth v. Friend*, 896 A.2d 607, 614-15 (Pa.Super. 2006) filed on or about August 15, 2013, an "Application to Withdraw Appearance" and supporting "No Merit Letter." *See* "Application to Withdraw" and "No Merit Letter." By his "No Merit Letter," the Defendant's lawyer based on his comprehensive, advocate's review of the salient record and related investigation concluded Defendant Dale's various explicit and/or implicit collateral claims raised by the Defendant's original PCRA pleading lacked merit and/or otherwise were unsupported by the material record. *See* "No Merit Letter," pp. 1-2, 10.

The Defendant on or about August 26, 2013, filed *pro se* a Petition for Extension of Time to File Response to "No Merit Letter." *See* Defendant's Extension Petition. Through this extension petition, the Defendant requested leave of court to submit in support of his initial collateral challenges additional legal authorities, other supportive documents, and/or relevant witness affidavits. *See* Defendant's Extension Petition, p. 1. The court by order dated August 30, 2013, granted Defendant Dale's request for an extension of time to submit his supplemental legal argument and/or other supportive factual materials. *See* Order dated August 30, 2013.

On September 20, 2013, the Defendant filed Petitioner's Response to Counsel's "No Merit Letter."[14] *See* Petitioner's Response to "No Merit Letter."

Defendant Dale on June 26, 2014, lodged *pro se* his Subsequent Petition for Post Conviction Collateral Relief.[15] *See* Defendant's Subsequent Petition.

By his subsequent petition, the Defendant sought to have his mandatory minimum sentence (Information A – Robbery)[16] set aside and that he be afforded a *de novo* sentencing hearing. *See* Defendant's Subsequent Petition, p. 8. More specifically, Defendant Dale maintained that his ten (10) year mandatory minimum sentence pursuant to the Sentences for Second and Subsequent Offenses[17] ran afoul of the constitutional teachings per the United States Supreme Court in *Alleyne v. United States*, 133 S.Ct. 2151 (2013).[18] *See* Defendant's Subsequent Petition, p. 2.

---

[14] It was only on its receipt of the Defendant's later submitted *pro se* Petitioner's Combined Response to the Trial Court's Notice of Intent to Dismiss Without a Hearing (August 8, 2014) that this court became aware Defendant Dale had past lodged his requested response to appointed counsel's "No Merit Letter" as for whatever the reasons the Delaware County Office of Judicial Support on the response's lodging did not forward the same. *See* Petitioner's Combined Response and Petitioner's Response to "No Merit Letter." After being so alerted to the Defendant having seemingly past filed his response to the "No Merit Letter," this court finally was able to secure from the Judicial Support Office of Delaware County his Petitioner's Response to Counsel's "No Merit Letter." *See* Petitioner's Response to "No Merit Letter."

[15] This subsequent collateral pleading advanced a sentencing legality claim wholly separate and discrete from any of the challenges the Defendant's original PCRA petition raised. *See* Defendant's Petition and Defendant's Subsequent Petition.

[16] 18 Pa.C.S. § 3701(a)(1)(ii).
[17] 42 Pa.C.S. § 9714.

[18] In addition to his *Alleyne* driven challenge to the sentence at bar's legality, the Defendant most generally advanced a claim that his ten (10) through twenty (20) year incarceration term exceeded the lawful statutory maximum. *See* Defendant's Subsequent Petition, p. 2. Bald, undeveloped averments fail to satisfy a defendant's burden of establishing entitlement to PCRA relief when such allegations are boiler plate, constitutional claims. *Commonwealth v. Hall*, 582 Pa. 526, 535, 872 A.2d 1177, 1182 (2005) and *Commonwealth v. Washington*, 583 Pa. 566, 573-74, 880 A.2d 536, 540-41 (2005).

Moreover, Defendant Dale was found guilty by the jury of perpetrating a robbery through means of intentionally placing his victim in fear of immediate serious bodily injury, 18 Pa.C.S. § 3701(a)(1)(ii). N.T. 7/14/10, pp. 112-13. *See also* Jury's Verdict. This mode of robbery (intentionally placing victim in fear of immediate serious bodily injury) was a first degree felony, 18 Pa.C.S. § 3701(b)(1). The statutory maximum period of imprisonment salient to

6

Because of the discreet nature of the claims raised by his first versus his second PCRA petitions and recognizing that the resolution of the original collateral filing was grounded on appointed counsel's "No Merit Letter" in combination with its independent case record review, the court on July 29, 2014, entered of-record two (2) respective dismissal notices, one (1) adopting the defense attorney's "No Merit Letter" rationale and granting Mr. DiBenedetto Forrest's withdrawal application[19] salient to the first PCRA petition while the other detailed with

---

robbery – intentionally place victim in fear of immediate serious bodily injury (18 Pa.C.S § 3701(b)), a felony of the first degree, is twenty (20) years imprisonment. *See* 18 Pa.C.S. § 1103(1). This court's aggregate sentence of ten (10) through twenty (20) years incarceration comported with the salient statutory maximum and was thus unquestionably lawful. *See* Certificate of Imposition of Judgment of Sentence. *See generally* 42 Pa.C.S. § 9543(a)(2)(vii) and *Commonwealth v. Lewis*, 430 Pa.Super. 336, 343, 634 A.2d 633, 636 (1993) *citing Commonwealth v. Grier*, 410 Pa.Super. 284, 288, 599 A.2d 993, 995 (1991).

[19] On the Defendant's *pro se* lodging of his Subsequent Petition for Post Conviction Collateral Relief as discussed *infra*, the court reviewed the salient case record and based on the filings then available to it, *inter alia*, concluded as below regarding the Defendant's *pro se* Petition for Extension of Time to File Response to "No Merit Letter:"

> Despite being afforded the requested opportunity to provide such to this court, the Defendant to date has submitted in support of his original PCRA petition no additional legal authorities, no relevant documents of any kind, and not a single witness affidavit similar to his not having provided appointed counsel affidavits of any potential witnesses as the instant collateral filing and extension petition so averred.

*See* Dismissal Notice of Original Collateral and Order, dated July 29, 2014, Fn. 2. *See also* Defendant's Extension Petition; Order dated August 30, 2013; and "No Merit Letter."

Once having received from the Judicial Support Office the Defendant's reply to his lawyer's "No Merit Letter," the court reviewed the same and in the context of that which the response set forth once more independently examined the relevant case record. In such regard, *inter alia*, the court noted that based on his advocate's examination of the salient case record and related investigation, including but not limited to reviewing the trial attorney's file and discussing such concerns with him, collateral counsel per his "No Merit Letter" concluded that below:

> The record initially indicates that Defendant's wife, Shavon Jenkins testified in Defendant's case to assist in the alleged alibi ... . Isiah Matthews .... and Natasha Dale (sister of Defendant) were also interviewed in advance of trial. Based on this investigation, the undersigned submits that trial counsel strategically determined that *no exculpatory evidence* would have been elicited, and it was otherwise not in defendant's interest to call said witnesses. While there did not to appear to be an issue regarding the availability of said witnesses, the use of such a testimony, if elicited, would have not have been helpful to the defendant. *Counsel clearly had a reasonable basis for not utilizing said witnesses at trial*, which rationale concludes that *counsel rendered affective assistance*.

7

the factual findings and legal conclusions the court's reasoning underlining its intent to dismiss, absent a hearing, the Defendant's second, sentencing driven collateral petition. *See* Dismissal Notices, dated July 29, 2014.

On August 8, 2014, the Defendant filed Petitioner's Combined Response to the Trial Court's Notice of Intent to Dismiss Without a Hearing.[20] *See* Petitioner's Combined Response.

Without seeking such and/or the court granting him that leave, Defendant Dale on October 6, 2014, submitted an Amendment to Subsequent Petition for Post Conviction Collateral Relief.[21] *See* Defendant's Amendment to Subsequent Petition.

---

"No Merit Letter," p. 7. (Emphasis added).

[20] Defendant Dale appended to his combined response a copy of a letter from Scott D. Galloway, Esquire indicating a belief he was appointed for purposes of the second collateral petition to represent the Defendant's interests. *See* Petitioner's Combined Response.

On its review of the Defendant's subsequent PCRA petition in recognizing that it set forth a sentencing legality attack wholly discreet and independent of any of those claims his original collateral petition advanced, the court opted not to again appoint counsel, but instead to first conduct its independent case record review believing the legal nature of this collateral claim would readily allow its resolution without an evidentiary hearing. Pa.R.Crim.P. 904(D). *See also Commonwealth v. Smith*, 572 Pa. 572, 577-85, 818 A.2d 494, 496-501 (2003) *quoting* Pa.R.Crim.P. 904; *Commonwealth v. Rykard*, 55 A.3d 1177, 1187 (Pa.Super. 2012); and *Commonwealth v. Glacken*, 32 A.3d 750, 753 (Pa.Super. 2011).

Pursuant to longstanding administrative practices, the Office of Judicial Support on the Defendant's *pro se* lodging of his subsequent petition forwarded the same to this court along with notification that in the event it was determined counsel should be appointed, Mr. Galloway per such relevant protocols was to be designated such. Despite this court never having so acted, judicial support personnel assumed Mr. Galloway's appointment and erroneously noted such of-record on the case docket. After discussions with the Delaware County Judicial Support Office Director and the Office of Judicial Support's inability to produce the order of another jurist appointing Mr. Galloway stewardship of the Defendant's interests material to the second PCRA pleading, the case record was corrected to accurately reflect this matter's events.

[21] In his *pro se* lodging of this petition, the Defendant neither sought nor did this court grant him leave to so amend his subsequent collateral filing attacking his conviction's legality. *See Commonwealth v. Rykard supra* 55 A.3d at 1192 *citing Commonwealth v. Williams*, 557 Pa. 207, 252-53, 732 A.2d 1167, 1191 (1999); *Commonwealth v. Paddy*, 609 Pa. 272, 339-40, 15 A.3d 431, 471 (2011); *Commonwealth v. Porter*, 613 Pa. 510, 523-24, 35 A.3d 4, 12 (2012); *Commonwealth v. D'Amato*, 579 Pa. 490, 522, Fn. 19, 856 A.2d 806, 825, Fn. 19 (2004); and *Commonwealth v. Derrickson*, 923 A.2d 466, 469 (Pa.Super. 2007).

The court by order dated December 2, 2014, dismissed both the Defendant's original Petition for Post Conviction Collateral Relief and his Subsequent Petition for Post Conviction Collateral Relief.[22] *See* Order dated December 2, 2014.

On December 12, 2014, the Defendant lodged a timely *pro se* Notice of Appeal. *See* Notice of Appeal. The court instructed Defendant Dale via order dated December 23, 2014, to file a Concise Statement of Matters Complained of on Appeal. *See* Order dated December 23, 2014.

Per a separate order of the same date (December 23, 2014), the court granted in part and denied in part the Defendant's Combined Request for Leave to Proceed in Forma Pauperis [*sic*] and for Appointment of Counsel on Appeal. *See* Order dated December 23, 2014. The court allowed Defendant Dale's application for leave to proceed *in forma pauperis*, but refused his request for an appellate attorney's appointment. *See* Order dated December 23, 2014.

Responding to this court's order (December 23, 2014), directing the same, Defendant Dale timely lodged on December 31, 2014, a *pro se* statement of appellate complaints raising nine (9) assignments of error.

The majority of the Defendant's appellate complaints maintain he was afforded professionally incompetent representation by his pretrial, trial, and collateral attorneys. *See* Statement of Matters Complained, Nos. 4, 5, 6, 7, 8. Such error assignments will be addressed collectively below with individualized discussion as necessary salient to certain of these challenges to counsel's stewardship, along with the related claim this court erred in the dismissal of Defendant Dale's initial PCRA petition, absent a hearing. *See* Statement of Matters

---

[22] As part of its deliberative processes material to the dismissal order's entry, the court fully reviewed and considered that set forth by the Defendant via his Petitioner's Combined Response to the Trial Court's Notice of Intent to Dismiss Without a Hearing. *See* Defendant's Combined Response. *See also* Order dated December 2, 2014.

Complained, No. 3. The Defendant also advances via his final error assignment as discussed *infra* a generalized prosecutorial misconduct claim. *See* Statement of Matters Complained, No. 9, compared to No. 8. The Defendant's two (2) remaining complaints on appeal contending errors on the part of this court in refusing his request to appoint appellate counsel regarding the dismissal of the original PCRA petition and not by considering his subsequent collateral filing an "extension" of his initial such lodging will be first addressed. *See* Statement of Matters Complained, Nos. 1, 2.

*I. Did the trial court err in denying appellant's Request for Appointment of Counsel on Appeal from the order dismissing Appellant's initial PCRA petition?*

*See* Statement of Matters Complained, No. 1.

By way of this first appellate complaint, Defendant Dale maintains that the court erred in its denial of his request for the appointment of counsel on the present appeal as it relates to " ... the order dismissing Appellant's initial PCRA Petition ... ."[23] *See* Statement of Matters Complained, No. 1. *See also* Defendant's Combined Request ... for Appointment of Counsel on Appeal and Order dated December 23, 2014. This error assignment on the instant record is without merit.

"An indigent petitioner is entitled to appointment of counsel on his *first* PCRA petition ... ." *Commonwealth v. Perez supra* 799 A.2d at 851-52 (Emphasis added) *citing Commonwealth v. Guthrie supra* 749 A.2d at 504; *Commonwealth v. Ferguson supra* 722 A.2d

---

[23] By the plain terms of this error assignment and his statement of complaints otherwise, the Defendant does not take issue with the court having declined for purposes of his subsequent collateral petition challenging the lawfulness of the sentence at bar to once more appoint counsel. *See* Statement of Matters Complained, No. 1. Hence, this court will offer no further discussion regarding its decision to not again appoint a lawyer to represent Defendant Dale on the *pro se* lodging of his subsequent petition beyond that already described above and detailed per the order of dismissal (December 2, 2014). Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.") *See also Commonwealth v. Mann,* 820 A.2d 788, 794 (Pa.Super. 2003), *appeal denied,* 574 Pa. 759, 831 A.2d 599 (2003) and *Commonwealth v. Cannon,* 954 A.2d 1222, 1228 (Pa.Super. 2008).

10

at 179; and *Commonwealth v. Hampton supra* 718 A.2d at 1252-53. *See also Commonwealth v. Ramos supra* 14 A.3d at 895-96 and *Commonwealth v. Luckett supra* 700 A.2d at 1016.

The court appointed Attorney DiBenedetto Forrest as counsel for the Defendant with the *pro se* lodging of his first post conviction collateral relief petition. *See* Order dated March 30, 2012. *See also* Defendant's Petition. Mr. DiBenedetto Forrest on or about August 15, 2013, filed an "Application to Withdraw Appearance" and supporting "No Merit Letter." *See* "Application to Withdraw" and "No Merit Letter." *See also Commonwealth v. Finley supra* 481 U.S. at 558-59, 107 S.Ct. at 1995; *Commonwealth v. Turner supra* 518 Pa. at 495, 544 A.2d at 928-29; and *Commonwealth v. Friend supra* 896 A.2d at 614-15. On July 29, 2014, this court granted the appointed counsel's "Application to Withdraw Appearance." *See* Dismissal Notice of Original Petition and Order, dated July 29, 2014.

Defendant Dale on December 12, 2014, lodged his Combined Request ... for Appointment of Counsel on Appeal. By way of this request, the Defendant, *inter alia*, sought at bar his second appointment of counsel in order to raise ineffectiveness claims on appeal against his first appointed, collateral lawyer. Defendant Dale noted per his appointment of appellate counsel request that "[t]he record is not clear as to whether or not the Court has granted former counsel's Application to Withdraw Appearance." *See* Defendant's Combined Request ... for Appointment of Counsel on Appeal. Despite this assertion, the instant record clearly demonstrates that this court granted originally appointed counsel's withdrawal application via its July 29, 2014, dismissal notice and related order. *See* Dismissal Notice of Original Collateral Petition and Order, dated July 29, 2014.

On December 23, 2014, this court denied the Defendant's Combined Request ... for Appointment of Counsel on Appeal. *See* Order dated December 23, 2014. This denial of the

11

Defendant's application for counsel was grounded in the court's prior decision to allow the past appointed collateral attorney's withdrawal request. The court concurred on its independent case examination with appointed counsel relevant to Defendant Dale's first PCRA petition that such collateral complaints were meritless and/or unsupported by the material record. The court relatedly permitted via order Attorney DiBenedetto Forrest's requested withdrawal. *See* Dismissal Notice of Original Petition and Order, dated July 29, 2014. *See also* Pa.R.Crim.P. 120(B)(1)(2). The Defendant was not again entitled to the appointment of a lawyer to pursue an appeal from the resulting denial of this same PCRA pleading. *Commonwealth v. Perez supra* 799 A.2d at 851-52 *citing Commonwealth v. Gutherie supra* 749 A.2d at 504.

Moreover, Defendant Dale's assertion that a second court appointment was needed to advance claims of ineffectiveness against his collateral counsel is of no moment as such allegations are to be raised in a defendant's response to a court's dismissal notice and not for the first time on appeal. *See Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014) and *Commonwealth v. Ford*, 44 A.3d 1190, 1198 (Pa.Super. 2012) ("[W]hen counsel files a *Turner/Finley* no-merit letter to the PCRA court, a petitioner must allege any claims of ineffectiveness of PCRA counsel in a response to the court's notice of intent to dismiss.") *citing Commonwealth v. Pitts*, 603 Pa. 1, 9, Fn. 4, 981 A.2d 875, 880, Fn. 4. The Defendant did in fact by his Petitioner's Response to Counsel's "No Merit" Letter challenge his collateral lawyer's stewardship and has pursued on the instant appeal some of those same attacks. *See* Petitioner's Response to "No Merit Letter" and Statement of Matters Complained, Nos. 4, 5.

Having reviewed his appointed attorney's "No Merit Letter" as well as the case record and determined the collateral claims of Defendant Dale's initial PCRA petition were meritless and/or lacked on the salient record adequate support, this court granted counsel's withdrawal

12

application. *See* Dismissal Notice of Original Petition and Order, dated July 29, 2014. The Defendant was not thereafter once more entitled to counsel's appointment. In denying Defendant Dale's request that he again be afforded counsel to pursue the instant appeal relevant to the denial of his first collateral filing, this court for these reasons above believes it did not err. *See* Order dated December 23, 2014.

**II. Did the trial court err in failing to consider Appellant's subsequent PCRA Petition (citing Alleyne v. Unites States) as a continuation of his PCRA petition?**

*See* Statement of Matters Complained, No. 2.

Defendant Dale contends per this appellate complaint that the court was mistaken in considering the Defendant's Subsequent PCRA petition as an entirely separate and distinct PCRA petition versus a continuation of his original PCRA petition. *See* Statement of Matters Complained, No. 2.

It is only for the first time on appeal via his statement of appellate complaints that Defendant Dale advances his "extension" argument. Defendant Dale lodged his first PCRA petition on March 8, 2012. *See* Defendant's Petition. He then filed on June 26, 2014, his second collateral pleading. *See* Defendant's Subsequent Petition. A fair reading of the subsequent petition reveals that while the Defendant was obviously well aware the timing of its filing was problematic, he did not cite explicitly or implicitly that this second collateral pleading was an "extension" of his first PCRA petition, but rather averred what he believed to be an applicable exception to the Post Conviction Relief Act's one (1) year lodging mandate. *See* Defendant's Subsequent Petition, pp. 2-4. On July 29, 2014, this court filed its dismissal notice regarding the later PCRA petition and detailed, *inter alia*, that this collateral pleading was untimely. *See* Dismissal Notice of Subsequent Petition, dated July 29, 2014, pp. 6-11. Similar to his subsequent petition, Defendant Dale by his response to the court's dismissal notice did not

13

directly or indirectly set forth the argument his subsequent petition was an "extension" of his first original collateral pleading was timely lodged. *See* Petitioner's Combined Response. The Defendant via his amended petition also recognized the subsequent petition's filing was on its face untimely and once more cited what he believed to be the statutory exception material to the Post Conviction Relief Act's one (1) year date certain filing requisite, yet again Defendant Dale did not explicitly and/or implicitly maintain that as an "extension" of the original PCRA petition this later collateral pleading was timely lodged. *See* Defendant's Amendment Petition, p. 4. While not directly advanced by the Defendant, his claim on appeal that this second collateral filing was merely an "extension" of his original PCRA petition is a belated effort to avoid the statutory time bar and the court resultantly lacking requisite jurisdiction. *See generally* 42 Pa.C.S. § 9543(b)(1)(3). The Defendant having failed to raise before this court his current "extension" claim and opting to do so only for the first time at bar on appeal, this error assignment for purposes of appellate review should be deemed waived. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). *See also Commonwealth v. Duffy*, 832 A.2d 1132, 1137 (Pa.Super. 2003); *Commonwealth v. Tejada*, 107 A.3d 786, 797 (Pa.Super. 2015); and *Commonwealth v. Parker*, 104 A.3d 17, 28 (Pa.Super. 2014).

Although believing that it did not err in refusing to consider Defendant Dale's subsequent petition a simple "extension" of his first collateral filing, regardless of whether this court was mistaken in not so viewing the Defendant's second PCRA petition, the collateral claim it advances is without legal merit.

The Pennsylvania Supreme Court has rejected attempts " ... to circumvent the PCRA time-bar by treating the second petition as an amendment to the first petition, where ... the

14

second petition was filed after the expiration of the PCRA filing deadline." *Commonwealth v. Rienzi*, 573 Pa. 503, 508, 827 A.2d 369, 371 (2003). The Supreme Court has further opposed the notion that untimely collateral petitions may be viewed as "extensions" of previous collateral petitions. *See generally Commonwealth v. Robinson*, 575 Pa. 500, 837 A.2d 1157 (2003).

The Supreme Court of Pennsylvania in *Commonwealth v. Porter* observed, "[o]ur procedural Rules contemplate that amendments to pending PCRA petitions are to be 'freely allowed to achieve substantial justice.' Pa.R.Crim.P. 905(A)." *Commonwealth v. Porter supra* 613 Pa. at 523, 35 A.3d at 12. The Supreme Court further found in *Porter* that the " ... appellant is mistaken in arguing that Rule 905 amendments are self-authorizing, *i.e.* that a petitioner may simply "amend" a pending petition with a supplemental pleading. Rather the Rule explicitly states that amendment is permitted only by direction or leave of the PCRA court." *Id.* at 523-24, 35 A.3d at 12. *See also Commonwealth v. Rykard supra* 55 A.3d at 1192 *citing Commonwealth v. Williams supra* 557 Pa. at 252-53, 732 A.2d at 1191; *Commonwealth v. Paddy supra* 609 Pa. at 339-40, 15 A.3d at 471; *Commonwealth v. D'Amato supra* 579 Pa. at 522, Fn. 19, 856 A.2d at 825, Fn. 19; and *Commonwealth v. Derrickson supra* 923 A.2d at 469. The Pennsylvania Supreme Court also noted that the defendant in *Porter* wrongly addressed new and unrelated claims via his "amended" petition of his initial PCRA filing. *Id.* at 523-24, 35 A.3d at 12.

Although the record at bar certainly shows Defendant Dale did lodge an Amendment to Subsequent Petition for Post Conviction Collateral Relief having learned from the court's previously filed dismissal notice of the second collateral petition's untimeliness, this pleading by its plain terms neither requested leave to amend his past filing nor did this court grant him such

15

relief. Pa.R.Crim.P. 905(A).[24] *See also* Defendant's Amendment Petition. This unauthorized attempted amendment to his subsequent petition does not bolster his effort to bring his second collateral filing within mandated statutory time parameters as a simple "extension" of his first PCRA petition. *Commonwealth v. Porter supra* 613 Pa. at 523, 35 A.3d at 12. *See also Commonwealth v. Rienzi supra* 573 Pa. at 508, 827 A.2d at 371 and *generally Commonwealth v. Robinson supra*.

Further, Defendant Dale averred in his subsequent PCRA petition entirely new and unrelated challenges from those asserted in the Defendant's original PCRA petition. *See* Subsequent PCRA Petition. *See also Commonwealth v. Porter supra* at 523-24, 35 A.3d at 12. These separate and distinct claims all largely focused on the legality of the Defendant's sentence through the teachings of *Alleyne v. United States supra*; however, the Defendant's initial PCRA petition did not contain explicitly and/or implicitly any such sentencing challenge. *See* Defendant's Petition and Subsequent PCRA Petition.

Defendant Dale's argument that he can avoid the patent time bar and the absence of this court enjoying requisite jurisdiction under the guise that the wholly separate and distinct sentencing challenge advanced via his belated subsequent petition was a mere extension of his first collateral petition only attacking counsel's stewardship is failing. *Commonwealth v. Porter supra* 613 Pa. at 523-24, 35 A.3d at 12. *See also Commonwealth v. Rykard supra* 55 A.3d at 1192 *citing Commonwealth v. Williams supra* 557 Pa. at 252-53, 732 A.2d at 1191; *Commonwealth v. Paddy supra* 609 Pa. at 339-40, 15 A.3d at 471; *Commonwealth v. D'Amato*

---

[24] Per this error assignment and his statement of complaints otherwise, Defendant Dale does not take issue with the court having declined to recognize his attempted, self-authorizing amendment petition. Hence, this court will offer no further discussion regarding the Defendant's amendment petition beyond that detailed above salient to his "extension" argument. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.") *See also Commonwealth v. Mann supra* 820 A.2d at 794 and *Commonwealth v. Cannon supra* 954 A.2d at 1228.

16

*supra* 579 Pa. at 522, Fn. 19, 856 A.2d at 825, Fn. 19; and *Commonwealth v. Derrickson supra* 923 A.2d at 469.

With Defendant Dale's argument failing for these reasons detailed above that his subsequent petition was a simple "extension" of his original PCRA pleading, the untimely nature of this filing on the instant record is unquestioned.

A defendant must file a PCRA petition, including a second or subsequent one(s) within one (1) year from the date judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). A sentencing judgment becomes final for purposes of the Post Conviction Relief Act " ... at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3). This otherwise mandated one (1) year filing date is excused only if a defendant alleges and proves one of the statutory exceptions set forth in subsections (i), (ii) and/or (iii) of the Act's Section 9545, relating to government interference, newly discovered evidence, or a constitutional right recognized by the federal and/or state Supreme Courts that is applied retroactively. 42 Pa.C.S. § 9545(b)(1)(i)(ii)(iii). Even should one or more of these enumerated exceptions to the one (1) year lodging requisite attach, a defendant for purposes of the court's necessary jurisdiction must file any such collateral pleading " ... within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

The Superior Court has repeatedly held second or subsequent PCRA petitions untimely when such collateral pleadings were not filed within one (1) year after a defendant's judgment of sentence became final. *Commonwealth v. Johnson*, 945 A.2d 185, 188 (Pa.Super. 2008) and *Commonwealth v. Davis*, 916 A.2d 1206, 1208-09 (Pa.Super. 2007). Moreover, a second or additional PCRA petition will only be considered if a defendant demonstrates that the

17

proceedings resulting in his conviction were so unfair that a miscarriage of justice occurred which no civilized society can tolerate, or a defendant is innocent of the convicted crimes. *Commonwealth v. Lawson*, 519 Pa. 504, 513-14, 549 A.2d 107, 112 (1988) and *Commonwealth v. Szuchon*, 534 Pa. 483, 487, 633 A.2d 1098, 1100 (1993).

The Supreme Court of Pennsylvania on January 5, 2012, denied the Defendant's Petition for Allowance of Appeal salient to direct appellate review of his convictions. *See* Supreme Court No. 765 MAL 2011, Order dated January 5, 2012. Hence, after recognizing the ninety (90) day period for filing a Petition for Writ of Certiorari to the United States Supreme Court,[25] the sentencing judgment at bar became final on April 4, 2012. 42 Pa.C.S. § 9545(b)(3). *See also* Sup.Ct.R. 13.1.

Thus, in order to satisfy the Post Conviction Relief Act's one (1) year filing mandate, Defendant Dale was required to lodge his second PCRA pleading no later than April 4, 2013. The Defendant's second PCRA petition was filed on June 26, 2014, approximately twenty-six (26) months beyond the date his sentencing judgment at bar became final and accordingly this collateral pleading on its face was patently untimely. *See* Defendant's Subsequent Petition.

While after the one (1) year filing mandate a defendant may lodge a collateral pleading no more than sixty (60) days subsequent to the United States Supreme Court or the Supreme Court of Pennsylvania recognizing the constitutional protection being asserted, those claimed rights must be held by the Supreme Court of the United States and/or the Pennsylvania Supreme Court to have retroactive application for an otherwise belated collateral filing to fall within the relevant exception to the Post Conviction Relief Act's one (1) year lodging deadline necessary to the court's jurisdictional authority. 42 Pa.C.S. § 9545(a)(b)(1)(iii). *See also Commonwealth v.*

---

[25] Defendant Dale did not lodge such a Petition for Writ of Certiorari.

18

*Taylor*, 933 A.2d 1035, 1038 (Pa.Super. 2007) *citing Commonwealth v. Murray*, 562 Pa. 1, 4, 753 A.2d 201, 203 (2000).

The Defendant's second collateral petition clearly rested on the United States Supreme Court opinion of *Alleyne v. United States supra* which was decided on June 17, 2013. Because Defendant Dale was asserting constitutional rights recognized by the Supreme Court of the United States in its June 17, 2013, *Alleyne supra* decision, *inter alia*, he was required by the Post Conviction Collateral Relief Act to file of-record any such claims on or before August 16, 2013. 42 Pa.C.S. § 9545(b)(1)(2). His subsequent petition was lodged some ten (10) months thereafter. *See* Defendant's Subsequent Petition.

Defendant Dale's attempts to bring the subsequent PCRA pleading within the purview of any recognized exception to the Post Conviction Relief Act's one (1) year from the date sentencing judgment became final lodging mandate simply failed. Although via the collateral petition at bar the Defendant was unquestionably asserting a constitutional claim driven by the *Alleyne v United States supra* United States Supreme Court decision, he contended to avoid the fatal flaw of this court not having necessary jurisdiction those constitutional protections are " … facts upon which the claim is predicated were unknown to him and could not have been ascertained by the exercise of due diligence, … whereby satisfying the requirements of 42 Pa.C.S. § 9545(b)(2) [*sic*]." *See* Defendant's Subsequent Petition, p. 4. *See also* 42 Pa.C.S. § 9545(b)(1)(ii). The Defendant in an apparent concession his subsequent collateral petition was untimely, misconstrued his constitutional right assertion as a factually driven after discovered evidence challenge ignoring the Post Conviction Relief Act's unambiguous requisite, *inter alia*, that the assertion of a constitutional right recognized by the Supreme Court of the United States must be lodged within sixty (60) days of the date the claim could have been presented. 42

19

Pa.C.S. § 9545(b)(1)(ii)(iii)(2). *See* Defendant's Subsequent Petition, pp. 3-4. Moreover, the Defendant via his subsequent petition had not adequately averred let alone established his necessary exercise of due diligence, assuming his claim of constitutional rights could in some manner be seen as an after discovered evidence factual contention asserting constitutional protections. 42 Pa.C.S. § 9545(b)(1)(ii). *See Commonwealth v. Johnson supra* 945 A.2d at 188 and *Commonwealth v. Davis supra* 916 A.2d at 1208-09.

Assuming this error assignment is not found for purposes of the instant appeal to have been waived and in the event the facially late filing of the subsequent petition did not deprive this court of the jurisdiction necessary to adjudicating its collateral claim, Defendant Dale's *Alleyne* driven attack on his sentence is misplaced and without merit.

Unlike the defendant in *Alleyne* being subject to a mandatory minimum sentence resulting from the factual circumstance of his brandishing a firearm, *Alleyne v. United States supra* 133 S.Ct. at 2155-56, Defendant Dale's mandatory minimum sentence was solely grounded in his criminal recidivism. 42 Pa.C.S. § 9714(a)(1) ("Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years total confinement, ... .") *See also* Commonwealth's Sentencing Notice. N.T. 9/28/10, pp. 3-4, 13-14, 17-18.

In *Alleyne*, the Supreme Court of the United States acknowledged that it had past recognized a recidivism-prior conviction narrow exception to the constitutional requirement that the ultimate fact finder determine beyond a reasonable doubt any "element" of the crime that on conviction increases the sentencing penalty. *Alleyne v. United States supra* 133 S.Ct. at 1260, Fn. 1 *citing Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219 (1998).

20

Relatedly, the Supreme Court in *Alleyne* explicitly did not revisit this recidivism exception to the Sixth Amendment constitutional right of a jury finding beyond a reasonable doubt any "element" of the crime that on conviction attaches a mandatory minimum sentence. *Id.*

As it related to Defendant Dale's contention his prior first degree felony Robbery[26] conviction triggering his mandatory minimum sentence at bar should have been submitted to the jury for their collective determination whether such was proven beyond a reasonable doubt,[27] the United States Supreme Court in rejecting a similar constitutional attack opined as follows:

> ... [T]he sentencing factor at issue here-recidivism-is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence. ... Consistent with this tradition, the Court said long ago that a State need *not* allege a defendant's prior conviction in the ... information that alleges the elements of an underlying crime, even though the conviction was 'necessary to bring the case within the statute.' *Graham v. West Virginia*, 224 U.S. 616, 624, 32 S.Ct. 583, 585-86 (1912). That conclusion followed, the Court said, from '*the distinct nature of the issue*,' and the fact that recidivism 'does not relate to the commission of the offense, *but goes to the punishment only*, and therefore ... may be subsequently decided.' *Id.*, at 629, 32 S.Ct. at 588 (emphasis added). The Court has not deviated from this view. *See Oyler v. Boles*, 368 U.S. 448, 452, 82 S.Ct. 501, 503-504 (1962).

*Almendarez-Torres v. United States supra* 523 U.S. at 243-44, 118 S.Ct. at 1230-31.

> The question before us is whether this latter provision defines a separate crime or simply authorizes an enhanced penalty. ... [I]f the provision simply authorizes an enhanced sentence when an offender also has an earlier conviction, then ... the fact of an earlier conviction is not an element of the present crime.

---

[26] 18 Pa.C.S. § 3701.

[27] Although not required by the language of the Sentences for Second and Subsequent Offenses statute, Defendant Dale's previous first degree felony Robbery conviction was in effect established beyond a reasonable doubt via the stipulation of counsel regarding this past conviction as well as unsolicitedly acknowledged of-record by the Defendant. 42 Pa.C.S. § 9714(d). N.T. 9/28/10, pp. 13-14, 17-18. *See also Commonwealth v. Dale*, No. 5936-96 – Delaware County.

> We conclude that the subsection is a penalty provision, which simply authorizes the court to increase the sentence for a recidivist. It does not define a separate crime.

*Id.* 523 U.S. at 226, 118 S.Ct. at 1222.

The Superior Court has repeatedly found that *Alleyne* constitutionally invalidates those present Pennsylvania mandatory minimum sentencing statutes triggered by the prosecution's proof of certain facts (*E.g.* Visible Possession of Firearm during the Commission of certain Violent Crimes, 42 Pa.C.S. § 9712; Possession with Intent to Deliver specified Quantities of Controlled Substances, 18 Pa.C.S. § 7508; Possession of a Firearm while engaged in Drug Sales 42 Pa.C.S. § 9712.1; and/or Perpetrating listed crimes of violence at or about a public transit site, 42 Pa.C.S. § 9713). *See generally Commonwealth v. Valentine*, 101 A.3d 801 (Pa.Super. 2014) (Invalidating 42 Pa.C.S. §§ 9712 and 9713); *Commonwealth v. Mosley*, 2015 WL 1774216 (Pa.Super. 2015) (Invalidating 18 Pa.C.S. § 7508); *Commonwealth v. Munday*, 78 A.3d 661 (Pa.Super. 2013) (Invalidating 42 Pa.C.S. § 9712.1).

However, the Pennsylvania Superior Court has further reviewed the applicability of *Alleyne* in relation to a defendant's past criminal history in *Commonwealth v. Watley* and recognized relevant to current considerations that "[t]he *Alleyne* decision, therefore, renders those Pennsylvania mandatory minimum sentencing statutes *that do not pertain to prior convictions* constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard." *Commonwealth v. Watley*, 81 A.3d 108, 117 (Pa.Super. 2013) (*en banc*) (Emphasis added). *See also Commonwealth v. Lane*, 81 A.3d 974, 976, Fn. 5 (Pa.Super. 2013), *appeal denied*, 92 A.3d 811

22

(Pa. 2014) ("No Pennsylvania case has applied *Alleyne* to sentences enhanced solely by prior convictions.")[28]

Assuming *arguendo* it enjoyed necessary jurisdiction and this appellate complaint has not been waived being first raised on appeal, this court concluded that Defendant Dale's request that his recidivism driven mandatory minimum sentence be set aside as violative of his Sixth Amendment rights per the United Stated Supreme Court teachings in *Alleyne* was without support. *Alleyne v. United States supra* 133 S.Ct. at 2160, Fn. 1. *See also Almendarez-Torres v. United States supra* 523 U.S. at 226, 243-44, 118 S.Ct. at 1222, 1230-31; *Commonwealth v. Watley supra* 81 A.3d at 117; and *Commonwealth v. Lane supra* 81 A.3d at 976, Fn. 5. In light of the foregoing, this error assignment, if not seen as waived, is without support and meritless.

***III. Was PCRA counsel ineffective in failing to comply with the standards set out in Finley?***

***IV. Was PCRA counsel ineffective in failing to investigate and develop appellant's claims raised in his PCRA petition?***

*See* Statement of Matters Complained, Nos. 4 and 5.

Defendant Dale maintains that his PCRA counsel was professionally incompetent in not complying with the standards established for such representation by *Finley* and further that his collateral lawyer failed to address all those claims the Defendant had averred in his original collateral petition. *See* Statement of Matters Complained, No. 4 and 5. *See also* Petitioner's Response to "No Merit Letter." As these two (2) appellate complaints pertain to the alleged

---

[28] This court is aware that the Pennsylvania Supreme Court most recently in its decision of *Commonwealth v. Hopkins* held the Drug Free School Zones' mandatory minimum sentencing provisions, 18 Pa.C.S. § 6317, constitutionally infirm under *Alleyne*. *Commonwealth v. Hopkins*, 98 MAP 2013, Opinion. While the Supreme Court's reasoning in combination with those other fact driven mandatory sentencing statutes employing a similar statutory scheme and language render these other mandated sentences for the same reasons unconstitutional (*E.g.* 42 Pa.C.S. § 9712 – Sentences for Offenses Committed with Firearms), it is the view of this court that there are no salient legal principles set forth via *Hopkins* that call into question the current viability of the Superior Court's past decisions recognizing that *Alleyne* yet acknowledges a recidivism-prior conviction narrow exception to the constitutional requirement that the ultimate fact finder determine beyond a reasonable doubt any other type "element" of the crime that on conviction increases the sentencing penalty. *Commonwealth v. Hopkins supra.*

23

ineffectiveness of Defendant Dale's PCRA counsel and both involve his PCRA attorney's review of the Defendant's record at bar they will be addressed jointly. *See* Statement of Matters Complained, No. 4 and 5.

Foremost, an ineffectiveness of PCRA counsel error assignment is waived for appellate review unless it is raised in a defendant's response to the court's dismissal notice. *Commonwealth v. Henkel supra* 90 A.3d at 20 and *Commonwealth v. Ford supra* 44 A.3d at 1198 ("[W]hen counsel files a *Turner/Finley* no-merit letter to the PCRA court, a petitioner must allege any claims of ineffectiveness of PCRA counsel in a response to the court's notice of intent to dismiss.") *citing Commonwealth v. Pitts supra* 603 Pa. at 9, Fn. 4, 981 A.2d at 880, Fn. 4. Defendant Dale properly raised the alleged incompetence of his collateral lawyer for purposes of the pending appeal having advanced such a claim in his combined response to this court's dismissal notices.[29] *See* Petitioner's Combined Response. *See also Commonwealth v. Henkel supra* 90 A.3d at 20 and *Commonwealth v. Ford supra* 44 A.3d at 1198 *citing Commonwealth v. Pitts supra* 603 Pa. at 9, Fn. 4, 981 A.2d at 880, Fn. 4.

An examination of a PCRA attorney's supposed professional incompetence is conducted under the general ineffectiveness of counsel standard. *Commonwealth v. Rykard supra* 55 A.3d at 1189 *citing Commonwealth v. Chmiel*, 612 Pa. 333, 361-62, 30 A.3d 1111, 1127-28 (2011) *citing Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975-76.

The law presumes counsel was not incompetent, and a defendant bears the burden to prove otherwise. *Commonwealth v. Uderra*, 550 Pa. 389, 400, 706 A.2d 334, 339 (1998) and

---

[29] In Defendant Dale's Combined Response to this court's dismissal notices, he noted that he had previously asserted his collateral counsel's ineffectiveness in the Defendant's Response to Counsel's "No Merit Letter." *See* Petitioner's Response to Dismissal Notice, p. 2. Through the incorporation of this document the Defendant adequately raised his collateral counsel's professional incompetence as required in *Commonwealth v. Henkel. Commonwealth v. Henkel supra* 90 A.3d at 20. *See also Commonwealth v. Ford supra* 44 A.3d at 1198 *citing Commonwealth v. Pitts supra* 603 Pa. at 9, Fn. 4, 981 A.2d at 880, Fn. 4.

*Commonwealth v. Burkholder*, 719 A.2d 346, 349 (Pa.Super. 1998). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate as follows: 1) The claim(s) are of arguable merit; 2) Counsel had no reasonable basis for his or her action(s) and/or omission(s) in question; and 3) Counsel's action(s) and/or inaction(s) prejudiced the defendant in that there was a reasonable possibility that but for the act or omission challenge, the outcome of the proceedings would have been different. *Commonwealth v. Pierce*, 515 Pa. 153, 158, 527 A.2d 973, 975 (1987) *citing Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). *See also Commonwealth v. Allen*, 557 Pa. 135, 144, 732 A.2d 582, 587 (1999); *Commonwealth v. Fulton*, 547 Pa. 282, 291, 830 A.2d 567, 572 (2009) *citing Commonwealth v. Pierce*, 567 Pa. 186, 202, 786 A.2d 203, 213 (2001); *Commonwealth v. Kimball*, 555 Pa. 229, 312, 724 A.2d 326, 333 (1999); and *Commonwealth v. Neal*, 421 Pa.Super. 478, 482, 618 A.2d 438, 440 (1992). A defendant bears the burden of proving all three (3) prongs of the ineffective standard and failure to establish even just one (1) of these requisites warrants dismissal of the claim without further consideration of the other two (2) additional necessary proofs. *Commonwealth v. Robinson*, 583 Pa. 358, 369, 877 A.2d 433, 439 (2005).

The *Strickland* benchmark encompasses all constitutionally cognizable claims of counsel's incompetence. *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975 *citing Strickland v. Washington supra* 466 U.S. at 687, 104 S.Ct. at 2064. Under the *Strickland* standard, an allegation of ineffectiveness cannot be proven without a finding of prejudice that except for the challenged act(s) or omission(s), the proceeding's outcome would have been different. *Commonwealth v. March*, 528 Pa. 412, 414, 598 A.2d 961, 962 (1991) and *Commonwealth v. Buehl*, 510 Pa. 363, 378, 508 A.2d 1166, 1174 (1986). Moreover, a defendant's lawyer cannot be deemed incompetent for failing to raise and/or pursue meritless

claims. *Commonwealth v. Sneed*, 616 Pa. 1, 33, 45 A.3d 1096, 1115 (2012) and *Commonwealth v. Hutchinson*, 521 Pa. 482, 488, 556 A.2d 370, 372 (1989).

"A PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness." *Commonwealth v. Natividad*, 595 Pa. 188, 209, 938 A.2d 310, 322-23 (2007) *citing Commonwealth v. Spotz*, 587 Pa. 1, 99, 896 A.2d 1191, 1250 (2006) (Finding the ineffectiveness claim insufficient when the appellant " ... failed to set forth his claim pursuant to the three-prong *Pierce* test for establishing an ineffective assistance of counsel claim."). *See also Commonwealth v. Perry*, 959 A.2d 932, 936 (Pa.Super. 2012) *quoting Commonwealth v. Natividad supra* 595 Pa. at 209, 938 A.2d at 322–23. *Commonwealth v. Hall supra* 582 Pa. at 535, 872 A.2d at 1182 and *Commonwealth v. Washington supra* 583 Pa. at 573 74, 880 A.2d at 540-41. " ... [A]n undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief." *Commonwealth v. Bracey*, 568 Pa. 264, 273, Fn. 4, 795 A.2d 935, 940, Fn. 4 (2001). Furthermore, bald, undeveloped averments fail to satisfy a defendant's burden of establishing entitlement to PCRA relief when such allegations are boilerplate, constitutional claims. *Commonwealth v. Hall supra* 582 Pa. at 535, 872 A.2d at 1182 and *Commonwealth v. Washington supra* 583 Pa. at 573-74, 880 A.2d at 540-41.

Section 9543 of the Post Conviction Relief Act, *inter alia*, provides to be eligible for relief a defendant must establish by a preponderance of the evidence that the conviction(s) resulted from one (1) or more of the Act's specifically delineated errors and/or defects and that such have not been previously litigated. *See* 42 Pa.C.S. § 9543(a)(1)(2)(3). A defendant asserting ineffective assistance of counsel must relatedly show that this ineffectiveness " ... so

undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *See* 42 Pa.C.S. § 9543(a)(2)(ii).

The Defendant's two (2) error assignments maintain that his collateral counsel was ineffective, and it was his burden to demonstrate that his collateral counsel was professionally incompetent. *Commonwealth v. Uderra supra* 550 Pa. at 400, 706 A.2d at 339 and *Commonwealth v. Burkholder supra* 719 A.2d at 349. Defendant Dale was unable to satisfy the *Strickland* benchmark requiring that he demonstrate: 1) The claim(s) are of arguable merit; 2) Counsel had no reasoned basis for his or her action(s) and/or omission(s) in question; and 3) Counsel's action(s) and/or inaction(s) prejudiced the defendant in that there was a reasonable possibility that but for the act(s) or omission(s) challenged, the outcome of the proceedings would have been different. *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975 *citing Strickland v. Washington supra* 466 U.S. at 687, 104 S.Ct. at 2064.

In first attacking his appointed counsel, Defendant Dale maintains Attorney DiBenedetto Forrest did not comply in some otherwise unspecified manner with the dictates of *Commonwealth v Finley supra*, *Commonwealth v. Turner supra* and *Commonwealth v. Friend supra*. *See* Statement of Matters Complained, No. 4. A review of the salient case record, including collateral counsel's "No Merit Letter" reveals otherwise. *See* "No Merit Letter."

Mr. DiBenedetto Forrest by his "No Merit Letter" fully detailed the scope of his collateral examination. *See* "No Merit Letter," pp. 1-2, 10. From Attorney DiBenedetto Forrest's review of the Defendant's initial petition and subsequent communications with him, via the "No Merit Letter," appointed counsel listed with particularity those PCRA issues Defendant Dale wanted examined. *See* "No Merit Letter," pp. 2-4, 9, 10. Mr. DiBenedetto Forrest then individually explained with references to notes of testimony and legal citations why these

27

collateral claims were meritless. *See* "No Merit Letter," pp. 4-9. Per that which his "No Merit Letter" details, the comprehensive, advocate's review Mr. DiBenedetto Forrest undertook and completed on the Defendant's behalf offers no support for this error assignment's complaint that appointed counsel was ineffective. To the contrary, Attorney DiBenedetto Forrest in the lodging of his "No Merit Letter" followed the applicable requisites of *Commonwealth v. Finley supra, Commonwealth v. Turner supra* and *Commonwealth v. Friend supra.*

Defendant Dale contends via his extensive response that his PCRA lawyer failed to address numerous allegations of his prior attorneys' purported professional incompetence. *See* Petitioner's Response to "No Merit Letter." A review of the Defendant's response, his original PCRA petition, and appointed counsel's "No Merit Letter" show otherwise. The only issues this court can discern that Defendant Dale raised and which was not directly detailed per the "No Merit Letter" is regarding pre-trial counsel's (Attorney Modesti) supposed failure to adequately meet with the Defendant. *See* Defendant's Petition; "No Merit Letter;" and Petitioner's Response to "No Merit Letter." Any challenge to the pre-trial stewardship of Attorney Modesti, including an alleged failure to sufficiently meet with the Defendant, on the instant record is meritless.

As discussed in more detail *infra*, Attorney Modesti's stewardship of Defendant Dale's interests at bar was modestly limited to an approximate month during which this case was at a pre-trial posture between an initial pre-trial conference and first trial listing. Moreover, and contrary to the Defendant's assertion that he failed to communicate with him, *inter alia*, Attorney Modesti lodged of record a Notice of Alibi Defense listing Cvyonne Jenkins as such a defense witness. *See* Notice of Alibi Defense, dated April 5, 2010. It defies common sense that Attorney Modesti could file an alibi notice with a specifically identified individual who was subsequently

28

called as a witness and so testified at trial, absent communications with Defendant Dale. *See* Notice of Alibi Defense, dated April 5, 2010. *See also* N.T. 7/14/10, pp. 10-29.

Defendant Dale has failed to adequately demonstrate that he was indeed prejudiced by the failure to address this issue of his pre-trial lawyer supposedly not communicating with him as it was his burden to do so in order to establish his collateral counsel's alleged ineffectiveness for not addressing and/or otherwise pursuing such a challenge. *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975 *citing Strickland v. Washington supra* 466 U.S. at 687, 104 S.Ct. at 2064. *See also Commonwealth v. Uderra supra* 550 Pa. at 400, 706 A.2d at 339 and *Commonwealth v. Burkholder supra* 719 A.2d at 349.

As the Defendant failed to demonstrate that he was prejudiced by his pretrial attorney's purported failure to meet with him prior to trial, his collateral counsel cannot be deemed professionally incompetent for failing to address such an issue. *Commonwealth v. Sneed supra* 616 Pa. at 33, 45 A.3d at 1115 and *Commonwealth v. Hutchinson supra* 521 Pa. at 488, 556 A.2d at 372.

Defendant Dale's second attack on collateral counsel's stewardship via his related contention that Attorney DiBenedetto Forrest " ... fail[ed] to investigate and develop Appellant's claims raised in his PCRA petition ... " likewise is just without adequate of record support. *See* Statement of Matters Complained, No. 5.

Mr. DiBenedetto Forrest's examination of the salient record was comprehensive. All notes of testimony were read. The court's file was reviewed. The files of the trial and direct appeal lawyers were fully inspected which included all discoverable materials as well as each attorney's litigation preparation. There were related communications with both trial counsel and the appellate lawyer. There were also communications with the Defendant and requests for

29

relevant information which if provided, was reviewed and considered. Armed with this wealth of material and documentation, applicable legal research was conducted. *See* "No Merit Letter," pp. 1-2. Eight (8) collateral claims were specifically identified as those ineffective challenges Defendant Dale wanted pursued. *See* "No Merit Letter," pp. 2-4. Beyond examining the case record in the context of those issues Defendant Dale wanted reviewed, appointed counsel additionally engaged in the supplemental record examination per that below:

> ... I have conducted an additional, independent review of the record regarding any potential, viable issues under the PCRA, not previous discussed, including possible claims against appellate counsel. This review encompassed all possible claims of a State [*sic*] and/or Federal [*sic*] Constitutional [*sic*] nature. Such legal and constitutional claims may not have been raised by the Defendant, but such a review is typically warranted. With regard to these issues and other potential violations of the law as well as that under the Constitutions of Pennsylvania and/or the United States, my investigation reveals no facts sufficient to prove a violation of any right of the Defendant. ... .

*See* "No Merit Letter," p. 10.

Resulting from this all-inclusive review, Attorney DiBenedetto Forrest lodged his ten (10) page, single spaced, "No Merit Letter" replete with legal authorities, testimonial notes, citations, and numerous footnotes. *See* "No Merit Letter."

The comprehensive, advocate's review Mr. DiBenedetto Forrest undertook and completed on the Defendant's behalf belies this error assignment's complaint that appointed counsel failed to investigate those collateral claims raised in his original PCRA petition as subsequently discussed further between Defendant Dale and appointed lawyer. *See* "No Merit Letter," pp. 1-4.

Despite the Defendant's assertions, Mr. DiBenedetto Forrest acted competently through his lodging of this "No Merit Letter." *See* "No Merit Letter." As Defendant Dale's appointed

30

PCRA counsel, Attorney DiBenedetto Forrest was free to reach the conclusions he believed in his best professional judgment warranted regarding the Defendant's PCRA petition and any other possible collateral claims. *See Commonwealth v. Finley*, 379 Pa.Super. 390, 397, 550 A.2d 213, 217 (Pa.Super. 1988); *Commonwealth v. Chmiel supra* 612 Pa. at 468, 30 A.3d at 1190-91; and *Commonwealth v. Meadows*, 567 Pa. 344, 365, 787 A.2d 312, 324 (2001). Defendant Dale's understandable disappointment that his PCRA lawyer found on his behalf no viable PCRA grounds to pursue is not a basis on which to support a finding that Mr. DiBenedetto Forrest provided incompetent, collateral stewardship.

Moreover, a defendant's lawyer cannot be found professionally incompetent for failing to raise and/or pursue baseless claims. *Commonwealth v. Sneed supra* 616 Pa. at 33, 45 A.3d at 1115 and *Commonwealth v. Hutchinson supra* 521 Pa. at 488, 556 A.2d at 372. This standard is as well applicable concerning assertions of a PCRA counsel's supposed ineffectiveness and their review of claims against a prior lawyer's claimed ineffectiveness. "Post-trial counsel will not be deemed ineffective for failing to raise and preserve meritless challenges to the effectiveness of trial counsel." *Commonwealth v. Rivera*, 816 A.2d 282, 292 (Pa.Super. 2003) *quoting Commonwealth v. Thuy*, 424 Pa.Super. 482, 498, 623 A.2d 327, 335 (1993).

*V. Was pretrial counsel (Modesti) ineffective in failing to meet and consult with appellant prior to trial, in failing to explore potential trial defenses, in failing to petition the trial court for funds to hire an investigator, in failing to prepare and file any pretrial motions, and in failing to contact and interview known witnesses whose testimony would have been exculpatory in nature?*

*See* Statement of Matters Complained, No. 6.

Through this appellate complaint, the Defendant maintains that his pre-trial lawyer, Arthur J. Modesti, Esquire, afforded him less than professionally mandated representation by failing to complete the following: Meeting with the Defendant prior to trial; Exploring possible

31

trial defenses; Hiring an investigator; Filing pretrial motions; and Contacting witnesses. *See* Statement of Matters Complained, No. 6. Given his very abbreviated stewardship of Defendant Dale's interests at bar together with such representation being limited to a time span encompassing only the case's pre-trial conference through the first trial listing at which Scott L. Kramer, Esquire entered his appearance, any challenge that Attorney Modesti was in some manner ineffective warranting collateral remedy is meritless.[30]

Attorney Modesti began his representation of the Defendant on April 5, 2010, and was soon after replaced on May 6, 2010, by Attorney Kramer. *See* Entries of Appearance. During this single month of Attorney Modesti's tenure as Defendant Dale's lawyer, no material instances of any consequence took place. Recognizing the minimal nature of the time period Attorney Modesti was the Defendant's of record attorney, it is not surprising that Defendant Dale failed to sufficiently demonstrate that any of his pre-trial lawyer's alleged actions and/or omissions underpinning this appellate complaint enjoy even arguable merit. Moreover, the Defendant has certainly not adequately established the challenged actions and/or inactions of Attorney Modesti occasioned him to suffer the requisite degree of prejudice necessary to collateral relief in that but for these purported oversights, the outcome of his trial which took place two (2) months subsequent to Mr. Modesti stepping aside and under the stewardship of a wholly independent defense counsel would have been otherwise. *Commonwealth v. Uderra supra* 550 Pa. at 400, 706 A.2d at 339; *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d

---

[30] As maintained by the Defendant in this appellate complaint, the only possible avenue by which Attorney Modesti could even remotely be found ineffective is his failure to lodge and litigate an exclusionary pleading. *See* Statement of Matters Complained, No. 5. However, the several issues the Defendant believes should have been addressed via a suppression motion by either Attorney Modesti or Attorney Kramer as discussed *infra* are each without merit. Recognizing, as Attorney Modesti may not be deemed incompetent for not pursuing meritless claims, his failing to lodge an exclusionary motion is not a viable ground on which a collateral remedy may rest. *Commonwealth v. Sneed supra* 616 Pa. at 33, 45 A.3d at 1115 and *Commonwealth v. Hutchinson supra* 521 Pa. at 488, 556 A.2d at 372.

at 975 *citing Strickland v. Washington supra* 466 U.S. at 687, 104 S.Ct. at 2064; and *Commonwealth v. Robinson supra* 583 Pa. at 369, 877 A.2d at 439.

Defendant Dale first maintains that Attorney Modesti failed to meet with him prior to his trial. *See* Statement of Matters Complained, No. 6. The Defendant has not offered any support as to how this alleged failure prejudicially impacted his matter at bar. *See* Statement of Matters Complained, Nos. 4 and 5. Additionally, this claimed lack of communication between counsel and Defendant Dale is undercut by Attorney Modesti having lodged of record an alibi notice detailing the very same witness who so subsequently at trial testified. *See* Notice of Alibi Defense, dated April 5, 2010 and N.T. 7/14/10, pp. 10-29.

Defendant Dale further contends that Attorney Modesti was professionally incompetent by failing to petition the court for funds to hire an investigator.[31] Defendant Dale previously averred in his Response to Counsel's "No Merit Letter" that "[h]ad counsel petitioned the court for funds to hire an investigator, Shaykia Cherry *may* have been located and subpoenaed for court." *See* Petitioner's Response to "No Merit Letter," p. 12. (Emphasis added.)

Not only is Defendant Dale's averment meritless as the Defendant failed to show how the hiring of a private investigator, who *may or may not* have found the purportedly helpful Shaykia Cherry,[32] who *may or may not* have been able to testify, and whose testimony *may or may not*

---

[31] In the Defendant's original PCRA petition, he averred that both Attorney Modesti and Attorney Kramer were ineffective for failing to petition the court for funds to hire private investigator. *See* Defendant's Petition, pp. 4, 15. *See also* Defendant's Response to "No Merit Letter," pp. 8-9.

The Office of the Delaware County Public Defender employs paralegals and investigators either of which was accessible to Attorney Modesti. Hence, no investigative authorization funding petition would have been lodged with the court by pre-trial counsel.

[32] The Defendant maintains that an individual named Shaykia Cherry was in possession of the victim's cellular phone and made contact with the victim concerning his phone. However, the Defendant has not provided any basis for his assertions other than references to Detective Houghton's affidavit of probable cause, "However, on p. 6 of the Incident Investigation Report, Detective Houghton notes that the victim notified him that he had been contacted by a Shaykia Cherry ... ." *See* Defendant's Petition, pp. 12, 17. A review of the relevant criminal complaint reveals

33

have been beneficial to the Defendant, even if such testimony was found credible by the jury, would have in fact altered the trial's outcome, especially at such an early stage of the proceedings when Attorney Modesti was still of record defense counsel. *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975 *citing Strickland v. Washington supra* 466 U.S. at 687, 104 S.Ct. at 2064. The Defendant's sheerly speculative argument regarding the hiring of a private investigator not only fails to possess merit, but falls short of demonstrating that he was indeed prejudiced by the absence of such an investigation being pursued.

Defendant Dale also avers by way of this error assignment that his pretrial counsel was ineffective by failing to " ... prepare and file any pretrial motions." *See* Statement of Matters Complained, No. 6. A review of the record at bar reveals he is mistaken.

On the same date Attorney Modesti entered his appearance (April 5, 2010), he simultaneously lodged a Notice of Alibi Defense and an Omnibus Pretrial Motion. *See* Notice of Alibi Defense, dated April 5, 2010. *See also* Omnibus Pretrial Motion. The notice listed a Cvyonne Jenkins as an alibi witness for the Defendant. *See* Notice of Alibi Defense, dated April 5, 2010. The omnibus pretrial pleading included both a Motion for Discovery and a Motion to Extend Time for Filing Omnibus Motion requesting additional time to file any omnibus claims that would be deemed necessary after a review of any received discovery materials. *See* Omnibus Pretrial Motion.

The Defendant is unable to demonstrate that this generalized claim has any arguable merit and/or that he suffered the degree of prejudice requisite to collateral relief. *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975 *citing Strickland v. Washington supra* 466 U.S. at 687, 104 S.Ct. at 2064.

---

that on page six (6) of the criminal complaint there is no mention of the purported Shaykia Cherry and/or this individual contacting the victim. *See* Criminal Complaint and Probable Cause Affidavit, No. 1184-10.

34

Defendant Dale also maintains that Attorney Modesti failed to contact and interview supposedly known witnesses, who would have divulged exculpatory evidence. *See* Statement of Matters Complained, No. 6. The Defendant again generally avers these witnesses possessed evidence beneficial to the defense without providing any support. Even had Attorney Modesti contacted these witnesses, Defendant Dale failed to demonstrate how such supposed exculpatory evidence stemming from these witnesses would have altered this case's outcome. Moreover, the limited time period that Attorney Modesti represented the Defendant would have also in turn restricted his ability to locate and contact potential trial witnesses.

Further, a review conducted by Defendant Dale's collateral counsel revealed even had Attorney Modesti spoken to these supposed exculpatory witnesses they would not have benefitted the Defendant's cause. *See* "No Merit Letter," p. 7. As collateral counsel's comprehensive, advocate's review found:

> ... The undersigned submits that trial counsel strategically determined that no exculpatory evidence would have been elicited, and it was otherwise ***not in Defendant's best interest to call said witnesses***. ... the use of such testimony, if elicited, would not have been helpful to the Defendant. ***Counsel clearly had a reasonable basis for not utilizing said witnesses at trial, which rationale concludes that counsel rendered effective assistance.***

*See* "No Merit Letter," p. 7. (Emphasis added).

Based on a review of the record at bar, not only does this error assignment lack arguable merit, but Defendant Dale failed to adequately demonstrate how these alleged failures of his pre-trial counsel of one (1) month at such an early stage of the proceeding would result in a different trial outcome. *Commonwealth v. March supra* 528 Pa. at 414, 598 A.2d at 962 and *Commonwealth v. Buehl supra* 510 Pa. at 378, 508 A.2d at 1174. *See also Commonwealth v. Natividad supra* 595 Pa. at 209, 938 A.2d at 322-23 *citing Commonwealth v. Spotz supra* 587 Pa.

35

at 99, 896 A.2d at 1250; *Commonwealth v. Hall supra* 582 Pa. at 535, 872 A.2d at 1182; and

*Commonwealth v. Washington supra* 583 Pa. at 573-74, 880 A.2d at 540-41. The Defendant has

simply not established how his pretrial lawyer's supposed ineffectiveness "undermined the truth-

determining process that no reliable adjudication of guilt or innocence could have taken place."

42 Pa.C.S. § 9543(a)(2)(ii).

The Defendant's various challenges pertaining to Attorney Modesti's professional

incompetence lack the support necessary to demonstrate such ineffectiveness did in fact take

place and/or that he as a result suffered actionable prejudice. *Commonwealth v. Pierce supra*

515 Pa. at 158, 527 A.2d at 975 *citing Strickland v. Washington supra* 466 U.S. at 687, 104 S.Ct.

at 2064. Defendant Dale has foremost failed to indicate how Attorney Modesti's supposed errors

months prior to a trial at which he was represented by wholly independent and privately retained

counsel altered the outcome of the matter at bar. *Id.* This appellate complaint of the Defendant

is therefore meritless.

### VI. Was pretrial/trial counsel Scott Kramer ineffective in failing to prepare and file any pretrial motions on behalf of the Appellant, to include, and most importantly, a pretrial motion to suppress evidence?

*See* Statement of Matters Complained, No. 7.

Defendant Dale via this appellate complaint most generally maintains that his pretrial

lawyer, Attorney Modesti, and trial counsel, Attorney Kramer, were professionally incompetent

by failing to file pretrial pleadings. The only such lodging so noted with particularity is a motion

to suppress evidence. *See* Statement of Matters Complained, No. 7. Although the Defendant has

not referenced in this error assignment any underlying justification that his counsel would have

for pursuing a suppression motion, a review of his original collateral petition in conjunction with

the Defendant's Response to Counsel's "No Merit Letter" reveals that he previously averred for

36

the filing of an exclusionary pleading numerous rationales. *See* Defendant's Petition, pp. 8-17. *See also* Defendant's Response to "No Merit Letter," pp. 12-14.

Per his initial PCRA petition as well as his response to collateral counsel's "No Merit Letter," Defendant Dale maintained that both Attorney Modesti[33] and Attorney Kramer should have lodged an exclusionary filing seeking to bar from the prosecution's use at trial the following: Description of the motor vehicle involved in the robbery; Victim's description of the offenders; Clothing worn by the Defendant; Detective Houghton's investigation into the Defendant's alibi; A supposed Incorrect date on Detective Houghton's affidavit of probable cause; and/or A Photograph array entered into evidence at trial. *See* Defendant's Petition, pp. 8-17. Defendant's Response to "No Merit Letter," pp. 12-14.

Even upon a cursory review of the relevant case record, it is readily evident that the vast majority of those claims Defendant Dale complains about his lawyers not advancing via a suppression motion are just devoid of merit. The Defendant's suggested challenges to the following are simply not the proper subjects of an exclusionary pleading, but rather are at most potential trial issues: Alleged conflicting descriptions of the motor vehicle involved in the robbery; Victim's description of the robbers and/or their clothing; Detective Houghton's investigation of the alibi defense; and Purported incorrect date noted in the criminal complaint's probable cause affidavit. *Commonwealth v. Burnside*, 425 Pa.Super. 425, 429, 625 A.2d 678, 680 (1993) *citing Commonwealth v. Tuck*, 322 Pa.Super. 328, 332, 469 A.2d 644, 646 (1983) and *Commonwealth v. Millner*, 585 Pa. 237, 259, 888 A.2d 680, 692 (2005). *See also*

---

[33] As was addressed previous salient to error assignment No. 6, Attorney Modesti's representation of the Defendant's interests at bar was most abbreviate and limited to a single month between the case's pre-trial conference and its first trial listing at which Attorney Kramer then entered his appearance. *See* Entries of Appearance. To the extent applicable, this prior discussion about Mr. Modesti's most modest stewardship is incorporated by reference as if fully set forth.

Defendant's Petition, pp. 8, 12-14 and Defendant's Response to "No Merit Letter," pp. 12-14. From the litany of subjects Defendant Dale contends should have been litigated pre-trial per an exclusionary pleading, only those of the photo array and the seizure of certain articles of clothing incident to his unrelated, arrest require further discussion. *Commonwealth v. Sneed supra* 616 Pa. at 33, 45 A.3d at 1115 and *Commonwealth v. Hutchinson supra* 521 Pa. at 488, 556 A.2d at 372.

Starting with the circumstances through which the Commonwealth came into possession of the Defendant's clothing articles, these two (2) possible suppression challenges as further detailed below do not advance a sufficient basis on which to ground Post Conviction Relief Act remedy.

Although the barring of physical items from the prosecution's trial usage is a common and proper form of relief to be sought via a suppression motion, the grounds Defendant Dale proffered as the basis for the clothing articles' exclusion[34] were not those of his constitutional rights supposedly being contravened and thus beyond the purview of a suppression pleading's relief. *See Commonwealth v. Burnside supra* 425 Pa.Super. at 429, 625 A.2d at 680 *citing Commonwealth v. Tuck supra* 322 Pa.Super. at 332, 469 A.2d at 646 and *Commonwealth v. Millner supra* 585 Pa. at 259, 888 A.2d at 692 ("The point of a motion to suppress physical evidence is to *eliminate* certain tangible evidence from the Commonwealth's trial armamentarium, *on grounds that the manner of the government's acquisition of that evidence involved a violation of the defendant's constitutional rights.*") (Emphasis added).

---

[34] Defendant Dale maintains that the shirt entered into evidence should have been suppressed as it was the article of clothing he was wearing on the day of his arrest which took place a month before the robbery at issue and that no information detailing the shirt the robbery assailant was wearing underneath the other clothing described by the victim. *See* Defendant's Petition, p. 13. *See also* Petitioner's Response to "No Merit Letter," pp. 10-11.

The Defendant's claimed grounds for the exclusion of his clothing articles not being a cognizable basis to suppress these items, this collateral attack lacks the merit requisite to Post Conviction Relief Act remedy. *See Commonwealth v. Dennis*, 597 Pa. 159, 175-76, 950 A.2d 954-55 (2008) *quoting Commonwealth v. McGill*, 574 Pa. 574, 587, 832 A.2d 1014, 1022 (2003); *Commonwealth v. Busanet*, 618 Pa. 1, 19, 54 A.3d 35, 46 (2012); and *Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa.Super. 2013) ("A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 583 Pa. 130, 876 A.2d 380, 385 (2005) ('if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim.') whether the 'facts rise to the level of arguable merit is a legal determination.' *Commonwealth v. Saranchak*, 581 Pa. 490, 866 A.2d 292, 304 n. 14 (2005).") Recognizing relatedly that a defendant's lawyer cannot be found professionally incompetent for not pursuing frivolous litigation, neither Attorney Modesti nor Attorney Kramer not seeking the clothing articles' exclusion is an instance of ineffective counsel. *Commonwealth v. Sneed supra* 616 Pa. at 33, 45 A.3d at 1115 and *Commonwealth v. Hutchinson supra* 521 Pa. at 488, 556 A.2d at 372.

Beyond the meritless nature of the underlining grounds he advanced regarding this collateral challenge to his lawyers not litigating the clothing items' exclusion, a review of the instant record and that of *Commonwealth v. Dale*, No. 798-10 Delaware County, shows that the Commonwealth lawfully came to possess these articles of clothing. *See also* Commonwealth's Exhibits C-5 – Black Long Sleeve Shirt; C-6 – Black Cargo Pants; and C-7 - Stipulation. N.T. 7/14/10, pp. 4-7.

39

Unrelated to the robbery at bar, on January 12, 2010, Sharon Hill Police Department Detective Richard Herron responded to a call involving a residential burglary. A Penndot search of the vehicle that was involved in this burglary revealed the mini van to be registered to the Defendant. Defendant Dale was further positively identified as one of the perpetrators by an eyewitness to the home's burglary. *See* Criminal Complaint and Probable Cause Affidavit, No. 798-10. Based on the above, Detective Herron lodged a criminal complaint on January 12, 2010, which after reviewing its supporting affidavit the Magisterial District Court Judge determined set forth mandated probable cause and the complaint was resultantly issued. *See* Criminal Complaint and Probable Cause Affidavit, No. 798-10. Pursuant to this court authorized criminal complaint, Detective Herron later that same day (January 12, 2010) arrested Defendant Dale and presented him for preliminary arraignment to the Magisterial District Court. *See* Case Docket, No. CR 5-10 - Magisterial District Court 32-2-50. On his arrest, the Defendant was wearing a black, long sleeve shirt and black cargo style, Dickies brand pants. *See* Commonwealth's Exhibit C-7 - Stipulation. *See also* Criminal Complaint and Probable Cause Affidavit, No. 1184-10; N.T. 7/13/10, pp. 172-77; and N.T. 7/14/10, pp. 4-7.

As Detective Houghton's probable cause affidavit detailed, while reviewing criminal investigations online through DelCoCrimeStat, he observed a posting from Detective Herron. This message advised that a black male was arrested for a burglary and not only described the motor vehicle involved in the burglary, but also included a picture of the mini van. Believing from interviews of the victim and his mother that the burglary and the robbery involved the same motor vehicle and, *inter alia*, the same person Sharon Hill police had recently arrested, Detective Houghton included this individual, Defendant Dale, in a photo array. *See* Criminal Complaint and Probable Cause Affidavit, No. 1184-10. This photo array was shown to the victim, and he

40

readily identified the Defendant as his armed assailant. N.T. 7/13/10, pp. 181-84, 261-62, 266-270. *See also* Commonwealth's Exhibit C-1 — Photo Array.

In No. 798-10, it is clear based on a review of the supporting affidavit, the Magisterial District Judge's determination that probable cause for the Defendant's arrest existed regarding the residential burglary was proper. *See* Criminal Complaint and Probable Cause Affidavit, No. 798-10. *See Commonwealth v. Thompson*, 604 Pa. 198, 203, 985 A.2d 928 (2009) *quoting Commonwealth v. Rodriguez*, 526 Pa. 268, 273, 585 A.2d 988, 990 (1991). *See also Commonwealth v. Burnside supra* 425 Pa.Super. at 429-30, 625 A.2d at 681 *quoting Commonwealth v. Simmons*, 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234 (1982). When then arrested Defendant Dale was wearing a black, long sleeve shirt and a black, pair of cargo style Dickies brand pants. N.T. 7/14/10, pp. 4-7. *See also* Commonwealth's Exhibit C-7 - Stipulation. As the Defendant was legally taken into custody per an appropriately judicially approved criminal complaint, his person and the articles of clothing that he was wearing were in plainly and lawfully observable to the arresting officers.

" '[P]lain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. 'Plain view' is better perhaps understood therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be." *Commonwealth v. McCree*, 592 Pa. 238, 248, 924 A.2d 621, 627-28 (2007) *quoting Commonwealth v. Graham*, 554 Pa. 472, 481-82, 721 A.2d 1075, 1079 (1998) *quoting Texas v. Brown*, 460 U.S. 730, 738-39, 103 S.Ct. 1535, 1541 (1983).

Both the Federal Constitution's Fourth Amendment and Article I, § 8 of the Pennsylvania Constitution require that law enforcement officials have a lawful right of access to any items

41

observed in plain view. *See also Commonwealth v. Dean*, 940 A.2d 514, 520 (Pa.Super. 2008). "The plain view doctrine permits the warrantless seizure of evidence where a police officer views an object from a " … lawful vantage point, and it is immediately apparent that object is incriminating." *Commonwealth v. Winfield*, 835 A.2d 365, 369 (Pa.Super. 2003) *citing Commonwealth v. Petroll*, 558 Pa. 565, 576, 738 A.2d 993, 999 (1999); and *Commonwealth v. Ballard*, 806 A.2d 889, 891 (Pa.Super. 2002). For the plain view doctrine to be applicable the following four (4) conditions must be satisfied: In arriving at the location from which the item can be viewed, police must not violate the Fourth Amendment; The items must be plainly observed; The items' incriminating character must be immediately apparent; and Police authorities must have a lawful right of access to the plainly viewed items. *Commonwealth v. McCree*, 592 Pa. 238, 256, 924 A.2d 621, 632 (2007) *citing Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2308 (1990).

This requisite probable cause nexus between observed items in plain view and criminal activity demands the facts known to police would warrant a man of reasonable caution in the belief that certain items may be useful as evidence of a crime. *Commonwealth v. McEnany*, 446 Pa.Super. 609, 619, 667 A.2d 1143, 1148 (1995) *citing Commonwealth v. Daniels*, 406 Pa.Super. 112, 116, 593 A.2d 895, 898-99 (1999). *See also Commonwealth v. Ellis*, 541 Pa. 285, 298, 662 A.2d 1043, 1049 (1995).

Moreover, the Pennsylvania Supreme Court has previously held that the seizure of a defendant's clothing following an arrest is constitutionally permissible as a search incident to a lawful arrest. *See Commonwealth v. Daniels*, 474 Pa. 173, 174, 377 A.2d 1376 (1977) *quoting Commonwealth v. Bundy*, 458 Pa. 240, 245-46, 328 A.2d 517, 520 (1974).

42

On the foregoing record, there was at bar no viable grounds to seek exclusion from the prosecution's use at trial the now challenged clothing articles of the Defendant. *Id.* *See also* Commonwealth's Exhibits C-5 – Black Long Sleeve Shirt; C-6 – Black Cargo Pants; and C-7 - Stipulation. Attorneys Kramer and Modesti cannot be shown to have been professionally incompetent for failing to pursue the suppression of the clothing as such an effort would have been baseless. *Commonwealth v. Sneed supra* 616 Pa. at 33, 45 A.3d at 1115 and *Commonwealth v. Hutchinson supra* 521 Pa. at 488, 556 A.2d at 372.

Similar to any attempt to suppress these articles of clothing coming into the Commonwealth's possession incident to the Defendant's unrelated, lawful arrest (No. 798-10), although neither Attorney Modesti nor Attorney Kramer lodged and litigated an exclusionary challenge to the victim being shown an investigative photo array and resultantly identifying Defendant Dale, the same offers this appellate complaint no support. Once again, defense counsel cannot be found ineffective for failing to pursue a meritless course of action. *Id.*

The Superior Court has previously found salient to photo arrays and suppression challenges as follows:

> Whether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances.' *Commonwealth v. Carson,* 559 Pa. 460, 480, 741 A.2d 686, 697 (1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000), *abrogated on other grounds by Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385 (2003). 'Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but 'suggestiveness alone does not warrant exclusion.' ' *Commonwealth v. Kubis,* 978 A.2d 391, 396 (Pa.Super. 2009). Identification evidence will not be suppressed 'unless the facts demonstrate that the identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.' ' *Commonwealth v. Burton,* 770 A.2d 771, 782 (Pa.Super. 2001), *appeal denied,* 582 Pa. 669, 868 A.2d 1197 (2005), *overruled on other grounds by*

43

> *Commonwealth v. Mouzon,* 571 Pa. 419, 429, 812 A.2d 617, 623 (2002), quoting [*sic*] *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Photographs used in line-ups are not unduly suggestive if the suspect's picture does not stand out more than the others, and the people depicted all exhibit similar facial characteristics. *Commonwealth v. Fisher,* 564 Pa. 505, 520, 769 A.2d 1116, 1126–1127 (2001).

*Commonwealth v. Fulmore,* 25 A.3d 340, 346 (Pa.Super. 2011).

"With regard to the suggestiveness of an identification procedure, we have consistently held that only if the totality of circumstances shows that the identification procedure was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' will the evidence be suppressed." *Commonwealth v. Blassingale,* 398 Pa.Super. 379, 393, 581 A.2d 183, 189 (1990) *citing Commonwealth v. Monroe,* 373 Pa.Super. 618, 622-23, 542 A.2d 113, 114-15 (1988), *appeal denied,* 522 Pa. 574, 559 A.2d 36 (1989) *quoting Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 976, 971 (1968).

"The factors relevant to determining the reliability of the identification are: ' ... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' " *Commonwealth v. Ransome,* 485 Pa. 490, 496, 402 A.2d 1379, 1381 (1979) *quoting Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253 (1970). "An opportunity to observe, even for a limited moment, can form an independent basis for an in-court identification." *Commonwealth v. Baker,* 531 Pa. 541, 553, 614 A.2d 663, 669 (1992) *citing generally Commonwealth v. Holland,* 480 Pa. 202, 389 A.2d 1062 (1978).

44

At trial, the victim described the two (2) men who robbed him, including specifically the handgun wielding Defendant. N.T. 7/13/10, pp. 172-77, 201-203. During his testimony, the victim explained there was nothing covering or obstructing his fully viewing the Defendant's face throughout the entirety of the robbery. N.T. 7/13/10, p. 179. The victim identified the Defendant as his firearm brandishing assailant. N.T. 7/13/10, p. 175.

After this in court identification, the victim explained the process by which he was presented the photo array and the decision he made in so identifying Defendant Dale. N.T. 7/13/10, pp. 181-84. In sum, the victim went to the police station a few weeks after the robbery where he was shown photographs by the detective. N.T. 7/13/10, p. 181. The victim testified that he "easily picked out the guy who I saw" and circled the Defendant's picture on the array as well as signed his name. N.T. 7/13/10, p. 182. *See* Commonwealth's Exhibit C-1 – Photo Array.

A review of the totality of salient circumstances surrounding the robbery and the victim's photo array identification of Defendant Dale show that this identification of the Defendant by the robbery victim was not " … so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Commonwealth v. Blassingdale supra* 398 Pa.Super. at 393, 581 A.2d at 189 *citing Commonwealth v. Monroe supra* 373 Pa.Super. at 622-23, 542 A.2d at 114-15 *quoting Simmons v. United States supra* 390 U.S. at 384, 88 S.Ct. at 971.

Throughout the entire robbery, there was nothing obscuring the victim's view of Defendant Dale's full face. N.T. 7/13/10, p. 179. Having driven slowly next to him as he walked along, the victim's attention was understandably focused on the mini van parked at the end of the block which within just seconds sped up toward the victim and Defendant Dale then exited to perpetrate the robbery. N.T. 7/13/10, pp. 167-69. The Defendant was in the victim's immediate proximity during the robbery being close enough to place a firearm against his body.

45

N.T. 7/13/10, pp. 169-77. The lighting conditions were at least adequate for identification purposes, if not appreciable more than sufficient. N.T. 7/13/10, pp. 177-78. The victim's description of his armed assailant to police authorities was consistent with Defendant Dale's physical appearance. N.T. 7/13/10, pp. 172-73. The attire the victim described as what the Defendant wore during the robbery was in accord with articles of clothing seized from Defendant Dale incident to his subsequent unrelated arrest.[35] N.T. 7/13/10, pp. 172-77. N.T. 7/14/10, pp. 4-7. *See also* Commonwealth's Exhibits C-5 – Black Long Sleeve Shirt; C-6 – Black Cargo Pants; and C-7 - Stipulation. The victim readily identified Defendant Dale as one of his robbers when shown the photo array and his identification of the Defendant was not only unequivocal, but in the words of the victim, he "easily picked out the guy ... ." N.T. 7/13/10, p. 182. *See also* Commonwealth's Exhibit C-1 – Photo Array. At bar, the victim did not identify the gun wielding robber as anyone other than Defendant Dale and had prior to his in court trial identification of the Defendant so identified him on two (2) previous occasions. N.T. 7/13/10, pp. 182-83. N.T. 2/19/10, pp. 9-10. *See also* Pa. SSJI (Crim) 4.07(A), 4.07(B) and Commonwealth's Exhibit C-1 – Photo Array. The totality of these circumstances relevant to the reliability of the victim's identifying Defendant Dale combine to demonstrate his photo array identification of the Defendant was proper and not subject to suppression. *Commonwealth v. Ransome supra* 485 Pa. at 496, 402 A.2d at 1381 *quoting Manson v. Brathwaite supra* 432 U.S. at 114, 97 S.Ct. at 2253.

---

[35] As detailed prior, although a prosecution unrelated to the above-captioned matter, it was on the residential burglary arrest of the Defendant that the detective investigating the robbery came to develop Defendant Dale as a suspect and subsequently learned certain articles of clothing the Defendant was wearing when arrested were consistent with those the robbery victim described regarding his armed assailant. *See Commonwealth v. Dale*, No. 798-10 – Delaware County. *See also* N.T. 7/13/10, pp. 260-61; N.T. 7/14/10, pp. 4-7; and Commonwealth's Exhibit C-7 - Stipulation.

The Defendant relatedly contends that the composition of the photo array was such that for not seeking its suppression his lawyers were professionally incompetent. More specifically, Defendant Dale takes issue with what he believes is the inordinately large depiction of his picture compared to the other photographs comprising the array. *See* Defendant's Petition, p. 9 and Petitioner's Response, pp. 5-6. *See also* Commonwealth's Exhibit C-1 – Photo Array. Beyond this one (1) averred discrepancy, the Defendant must ignore the numerous similarities between his picture and those additional photographs used for the array to reach the conclusion that a motion to suppress the photo was meritorious and his lawyers were thus ineffective in not pursuing its exclusion.

The photo array at issue was comprised of eight (8) total photographs. Each of the eight (8) individuals depicted is an African American male. The relative ages of the depicted persons are the same. All these photographs are focal "head shots" showing persons from the lower neckline upward with slightly varying degrees of shirts and shoulders also depicted. The skin tone of each person shown is the largely same. The hairstyles of the individuals depicted are all short cropped and each person shown has a somewhat receding hairline resulting in similar forehead expanses. Hair colors are the same. Facial shapes and features are consistent. All persons shown have a moustache and hair about their chins in a goatee like fashion. None of the individuals depicted have scars, tattoos, and/or distinguishing facial markings. There is a modest variance by size among the pictures' depiction of the persons with five (5) of the eight (8) photographs, including the Defendant's, appearing to be more in the nature of "close-ups" compared to the remaining three (3). *See* Commonwealth's Exhibit C-1 – Photo Array

Even with its discrepancy between five (5) of the eight (8) pictures being somewhat closer-up depictions, the totality of circumstances material to the photo array, including it

47

otherwise showing individuals clearly similar in all salient characteristics of physical appearance and the victim's immediately proximate and unobstructed opportunity to view his armed assailant, demonstrate this identification procedure simply does not warrant its suppression. *Commonwealth v. Fulmore supra* 25 A.3d at 346 *quoting Commonwealth v. Kubis supra* 978 A.2d at 396 (" 'Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion.' "). *Commonwealth v. Blassingdale supra* 398 Pa.Super. at 393, 581 A.2d at 189 *citing Commonwealth v. Monroe supra* 373 Pa.Super. at 622-23, 542 A.2d at 114-15 *quoting Simmons v. United States supra* 390 U.S. at 384, 88 S.Ct. at 971.

In light of the foregoing, Attorney Modesti and Attorney Kramer not having lodged a suppression filing seeking to preclude from the prosecution's use at trial Defendant Dale's clothes seized incident to his unrelated, burglary arrest[36] and/or the victim's photo array identification of him are not viable grounds for finding either and/or both lawyers ineffective. For not having pursued these baseless claims, defense counsel cannot be deemed professionally incompetent. *See Commonwealth v. Carelli*, 377 Pa.Super. 117, 125, 546 A.2d 1185, 1189 (Pa.Super. 1988) ("When, as in this case, an assertion of ineffective assistance of counsel is based upon the failure to pursue a suppression motion, proof of the merit of the underlying suppression claim is necessary to establish the merit of the ineffective assistance of counsel claim.") *citing Kitrell v. Dakota*, 373 Pa.Super. 66, 74-75, 540 A.2d 301, 306 (1988), *citing Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305, 318-19 (1986). *See also Commonwealth v. Thomas*, 560 Pa. 249, 255-57, 744 A.2d 713, 716-17 (2000);

---

[36] *See Commonwealth v. Dale*, No. 798-10 – Delaware County.

48

*Commonwealth v. Speight*, 544 Pa. 451, 461, 677 A.2d 317, 322 (1996); and *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975.

Material to this error assignment, Defendant Dale has not advanced with particularity additional pre-trial pleadings his attorneys should have filed beyond the above discussed suppression motion. The Defendant relatedly has not developed any support and/or meaningful argument for the generalized claim that his lawyers were ineffective in not lodging other types of pre-trial filings.[37] *See* Statement of Matters Complained, No. 7. Accordingly, this appellate complaint should be viewed as encompassing nothing more than a challenge to counsel's stewardship in not pursuing the exclusionary challenges detailed above and warrants no further commentary by this court. *Commonwealth v. Natividad supra* 595 Pa. at 209, 938 A.2d at 322-23 *citing Commonwealth v. Spotz supra* 587 Pa. at 99, 896 A.2d at 1250. *Commonwealth v. Bracey supra* 568 Pa. at 273, Fn. 4, 795 A.2d at 940, Fn. 4 (2001) (" … [A]n undeveloped argument, which fails to meaningfully discuss and apply the standard governing the review of ineffectiveness claims, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief.")

***VII. Was trial counsel Scott Kramer ineffective in failing to question Commonwealth witnesses on issues relevant to credibility, in failing to object to the admission of prejudicial evidence, in failing to object to prejudicial remarks and mis-stating [sic] of the evidence by the Commonwealth's attorney, and in failing to call alibi witnesses?***

*See* Statement of Matters Complained, No. 8.

By way of this appellate complaint, Defendant Dale maintains that his trial counsel, Attorney Kramer, was professionally incompetent during the course of trial relating to the

---

[37] Defendant Dale is mistaken in his sweeping assertion that neither Attorney Modesti nor Attorney Kramer filed pre-trial pleadings. Mr. Modesti lodged an Omnibus Motion regarding discovery and an extension of time in which to file additional counts on his review of the discoverable materials while Mr. Kramer also lodged a Motion to Compel Discovery seeking relevant materials such as the photo array, cellular telephone records, and/or a community flyer. *See* Omnibus Motion and Motion to Compel Discovery.

Commonwealth's presentation of its case concerning witness examination, admitted evidence, and statements made during the prosecution's summation that he contends were improperly prejudicial and/or misstatements of evidence. The Defendant also attacks his trial lawyer for failing to call alibi witnesses. *See* Statement of Matters Complained, No. 8. As Defendant Dale has failed to adequately demonstrate that Attorney Kramer's stewardship regarding any of these claims meets the requisites necessary for an ineffective counsel finding, this appellate complaint is meritless. *Commonwealth v. Uderra supra* 550 Pa. at 400, 706 A.2d at 339 and *Commonwealth v. Allen supra* 557 Pa. at 144, 732 A.2d at 587.

The majority of Defendant Dale's complaints per this error assignment clearly implicate matters of trial strategy. Hence, it must also be recognized that with respect to whether the acts and/or omissions of a defendant's attorney were reasonable, defense counsel is afforded broad discretion to determine tactics and strategy. *Commonwealth v. Thomas supra* 560 Pa. at 255-57, 744 A.2d at 716-17. The benchmark is not whether other alternatives were more reasonable employing a hindsight evaluation of the case record, but whether counsel's decisions had any reasoned basis to effectuate or advance a defendant's interests. *See Commonwealth v. Speight supra* 544 Pa. at 461, 677 A.2d at 322 and *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975. The fact that the strategy of a defendant's lawyer in any given case was not successful is irrelevant as long as the challenged actions and/or inactions of counsel "may be viewed" as reasonably designed to benefit the client. *Commonwealth v. Mickens*, 409 Pa.Super. 266, 277, 597 A.2d 1196, 1202 (1991).

Defendant Dale first maintains through this error assignment that his trial counsel failed to question the Commonwealth's witnesses as to issues relating to their credibility. *See*

Statement of Matters Complained, No. 8. A review of the record at bar readily reveals otherwise.

Attorney Kramer questioned the victim, Darren Brooks, extensively as to his recollection of the robbery clearly attempting to show the victim was at the very least mistaken in his identification of Defendant Dale as the firearm brandishing robber. N.T. 7/13/10, pp. 188-222. Relatedly, defense counsel undeniably inquired as to the location of the offense, the scene's lighting, the duration of the robbery, and the appearance of the two (2) offenders. N.T. 7/13/10, pp. 189-92. Likewise, the Defendant's attorney also sought to place the victim's memory in doubt by confronting him with statements he previously provided at the preliminary hearing and the inconsistencies between those answers he had formerly attested to and those at trial. N.T. 7/13/10, pp. 189, 193-95, 204-05, 214-17. *See generally* Pa. SSJI (Crim) 4.08A.

During the testimony of Reatha Johnson, the victim's mother, Attorney Kramer requested Ms. Johnson to describe her recollection of the night in question, including the lighting at the scene of the robbery, her vantage point in relation to the robbery's location, her inability to see the robbery take place, and a description of the assailants' motor vehicle. N.T. 7/13/10, pp. 248-54.

The Commonwealth's final witness at trial was Detective Houghton. N.T. 7/13/10, pp. 274-85. Defense counsel inquired into Detective Houghton's investigation surrounding the robbery, including the following: The victim and his mother's description of the mini van involved in the robbery; The detective's inability to locate the stolen cellular phone; and The victim's two (2) statements to Detective Houghton relative to the descriptions of the offenders and the robbery itself. N.T. 7/13/10, pp. 274-85.

This review of the testimony shows that Attorney Kramer did consistently confront all the Commonwealth witnesses with the understandable goal of having the jury doubt their individual and/or collective credibility so as to undermine the persuasiveness and the overall weightiness of the prosecution's evidentiary presentation. Specifically, Attorney Kramer sought to demonstrate that the victim's inconsistent memory of the night and his differing trial testimony from the preliminary hearing, the mother of the victim's remembrance of the location's lighting and her view of the robbery, as well as Detective Houghton's investigation and the victim-witness' descriptions of the robbers and their motor vehicle combined to show the prosecution's evidence was materially lacking. *See* Pa. SSJI (Crim) 2.04; 4.08A; 4.09; 4.15; and 4.17. N.T. 7/13/10, pp. 189, 193-95, 204-05, 214-17, 248-54, 274-85.

The record clearly revealing that trial counsel did challenge each prosecution witness with the obvious goal of discrediting their respective testimony, this attack on Attorney Kramer's stewardship is meritless. *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975 *citing Strickland v. Washington supra* 466 U.S. at 687, 104 S.Ct. at 2064.

Defendant Dale next maintains that his trial attorney was professionally incompetent by failing to object to the Commonwealth's introduction of prejudicial evidence, prejudicial remarks and/or misstatements of the evidence. *See* Statement of Matters Complained, No. 8. An examination of the record clearly reveals these assertions of ineffectiveness are unfounded.

While not specifically identified by the Defendant's appellate complaint, his response to collateral counsel's "No Merit Letter" did advance a challenge to his trial attorney's decision to refrain from objecting to the introduction of a shirt and a related claim he was professionally

52

incompetent for failing to do so.[38] *See* Petitioner's Response to "No Merit Letter," p. 11. Defendant Dale previously averred that the prosecutor " ... present[ed] the shirt in a way that would make it seem as though the petitioner was arrested while wearing the shirt on the day of the robbery when it was clearly not the case." *See* Petitioner's Response to "No Merit Letter," p. 11. Defendant Dale further maintained via his response that the trial testimony revealed the perpetrator of the robbery to be wearing a black, hooded sweatshirt while the shirt introduced at trial was a black, long-sleeve shirt. *See* Petitioner's Response to "No Merit Letter," p. 11.

At trial, the victim testified that the firearm brandishing of the two (2) robbers, Defendant Dale, was wearing a black, hooded sweatshirt and a pair of black, cargo pants during the robbery. N.T. 7/13/10, pp. 172, 202-203. Previously, the victim had relayed this information to Detective Houghton, who considered the clothing description notable in his investigation after having communicated with Detective Herron following the Defendant's unrelated arrest in No. 798-10. N.T. 7/13/10, pp. 270, 281. N.T. 7/14/10, pp. 4-7. *See also* Commonwealth's Exhibits C-5 - Black Long Sleeve Shirt; C-6 - Black Cargo Pants; C-7 - Stipulation; and *Commonwealth v. Dale*, No. 798-10 – Delaware County.

Later, during the Commonwealth's presentation of its case a black, long-sleeve shirt and a black, pair of cargo pants were entered into evidence through the use of a stipulation between the attorneys which stated as follows: " ... that if called to testify Detective Richard Herron would testify that at the time the Defendant, Louis Dale, was arrested he was wearing a black,

---

[38] This appellate complaint of the Defendant is so broadly stated that it could encompass almost any prosecution testimony and/or evidence his trial attorney did not oppose. *See* Statement of Complaints, No. 8. It is only in the context of reviewing the Petitioner's Response to "No Merit Letter" and its attack on trial counsel not objecting to the Commonwealth introducing the shirt (Commonwealth's Exhibit C-5) recovered incident to his unrelated, residential burglary arrest (*Commonwealth v. Dale*, No. 798-10) that meaning can be given to this error assignment. Assuming as stated this complaint on appeal is sufficiently averred, it should for purposes of appellate review be limited to the prosecution's admission into evidence of the long sleeve shirt, absent defense opposition. Pa.R.A.P. 1925(b)(vii). *See also Commonwealth v. Mann supra* 820 A.2d at 794 and *Commonwealth v. Cannon supra* 954 A.2d at 1228.

53

long sleeve shirt and a black, pair of cargo style Dickies brand pants." N.T. 7/14/10, pp. 4-7. *See also* Commonwealth's Exhibits C-5 - Black Long Sleeve Shirt; C-6 - Black Cargo Pants; and C-7 - Stipulation.

On the record at bar, the Defendant's trial counsel through this stipulation (Commonwealth's Exhibit C-7) and the related introduction of the clothing items (Commonwealth's Exhibits C-5 and C-6) furthered two (2) obvious defense aims.

As discussed prior, the admitted articles of clothing (Commonwealth's Exhibits C-5 and C-6) came into the prosecution's possession incident to Defendant Dale's subsequent, residential burglary arrest.[39] Absent the stipulation (Commonwealth's Exhibit C-7), the Commonwealth would at trial have called Detective Richard Herron of the Sharon Hill Police Department to authenticate this physical evidence. While Detective Herron most certainly would not have been permitted to testify about the Defendant's involvement in the subsequent burglary, just the testimonial appearance of a detective from a police agency other than that investigating the robbery may very well have created a suggestion adverse to the defense. Even had Detective Herron on being called to testify not been permitted to acknowledge his professional association with a law enforcement agency other than that investigating the robbery, the detective's testimony and the attorney's examination of him would have awkwardly confined and stilted again raising a possible suggestion contrary to the Defendant's cause. These understandable defense concerns were addressed through the use of this stipulation (Commonwealth's Exhibit C-7) in lieu of Detective Herron appearing as a Commonwealth witness which wholly avoided even a subtle inference of Defendant Dale's involvement in another, distinct criminal prosecution.

---

[39] *See Commonwealth v. Dale*, No. 798-10 – Criminal Complaint and Probable Cause Affidavit.

54

Beyond precluding any suggestion of the Defendant's unrelated criminality,[40] his trial attorney's agreement to the introduction of the black long sleeve shirt via the stipulation can readily be seen to further his interests generally and more specifically, the presented alibi defense. *See* Commonwealth's Exhibits C-5 – Black Long Sleeve Shirt and C-7 – Stipulation.

In describing the clothing of his armed assailant, the victim consistently detailed his attire relevant to this issue as a black "hoodie." N.T. 7/13/10, pp. 172, 202-203. The introduction of the t-shirt by the prosecution created an obvious internal inconsistency within the Commonwealth's own evidence. Its victim resolutely maintained his armed robber wore a hooded sweatshirt, yet in support of the same the prosecution through its investigators offered only a t-shirt. N.T. 7/13/10, pp. 172, 202-203. N.T. 7/14/10, pp. 4-7. *See also* Commonwealth's Exhibits C-5 – Black Long Sleeve Shirt and C-7 – Stipulation. This inherent conflict in the Commonwealth's evidence as well afforded the defense an additional avenue to dispute the victim's credibility not with its evidence, but more impactfully so with the visual, physical exhibit (Commonwealth's Exhibit C-5) of the prosecution. By its introduction, the Commonwealth was offering that its investigators believed the armed robber to have been clad in the t-shirt which called directly into question the victim's consistent claim of a hooded sweatshirt. N.T. 7/13/10, pp. 172, 202-203, 281-82. His relevant testimony being at odds with this physical evidence the police recovered during the investigation, also called into question the victim's critical identification of Defendant Dale in that if he could not accurately recount something as straightforward as what the armed robber in his immediate proximity was wearing,

---

[40] Assuring the jury did not directly or indirectly come to learn of Defendant Dale's unrelated, residential burglary arrest (*Commonwealth v. Dale*, No. 798-10) was a concern that went beyond the possible testimonial appearance of Detective Herron as addressed via the stipulation, Commonwealth's Exhibit C-7. On the defense's presentation of the alibi witness, Ms. Jenkins, this very same issue was discussed outside the jury's hearing among the court and attorneys to avoid even such an inadvertent disclosure. N.T. 7/14/10, pp. 16-17.

the weight of the victim's identification should as well be discounted. *See* Pa. SSJI (Crim) 4.07A, 4.09, 4.15. From the course of action the Defendant now collaterally attacks, his trial attorney not surprisingly made during his summation similar type arguments. N.T. 7/14/10, pp. 49-50, 52,[41] 58.

Defendant Dale further challenges the stipulation and admission of the long sleeve shirt (Commonwealth's Exhibit C-5) asserting that such was akin to a concession he was wearing that t-shirt while arrested on the day of the robbery. *See* Petitioner's Response to "No Merit Letter," p. 11. Foremost, this assertion founds no of record support. The stipulation neither makes mention of when Detective Herron arrested the Defendant for the unrelated, residential burglary[42] nor does the record otherwise suggest he was taken into custody on the same day as the robbery. *See* Commonwealth's Exhibit C-7 – Stipulation. N.T. 7/13/10, pp. 257-85. To the contrary, the detective in his testimony acknowledged that Defendant Dale was not arrested and charged until some weeks subsequent to the robbery. N.T. 7/13/10, pp. 165, 181, 267. Moreover, assuming *arguendo* that the stipulation (Commonwealth's Exhibit C-7) and material case record could even somehow be construed to suggest the Defendant was arrested on the date of the robbery then wearing the long sleeve t-shirt (Commonwealth's Exhibit C-5) and not the hooded sweatshirt, such would have just benefitted the defense. With the victim insisting his armed robber was wearing a black hooded sweatshirt, had the police later that same day promptly arrested the Defendant and not found him to have the sweatshirt, the victim's identification of Defendant Dale is again readily questioned as the time span to in some way

---

[41] An understandable and repeated theme during trial counsel's closing arguments salient to the victim's testimony and credibility was that " ... if you were robbed you would know basic things." N.T. 7/14/10, p. 52.

[42] The specifics of Detective Herron arresting the Defendant for the unrelated, residential burglary, including a date, were not referenced in the stipulation as an obvious guard against raising any suggestion adverse to Defendant Dale. *See* Commonwealth's Exhibit C-7 - Stipulation. *See also Commonwealth v. Dale*, No. 798-10.

dispose of the sweatshirt is greatly minimized and the absence of the hooded sweatshirt much harder for the prosecution to explain versus an arrest a number of weeks later.

The stipulation (Commonwealth's Exhibit C-7) and the related admission of the long sleeve t-shirt (Commonwealth's Exhibit C-5) together with the victim's unwavering description of his armed attacker wearing a black hooded sweatshirt also created circumstances which bolstered the Defendant's alibi defense. The victim's testimony established the gun wielding robber was attired in one set of clothes, while the stipulated police testimony and prosecution exhibit of the long sleeve t-shirt (Commonwealth's Exhibit C-5) arguably showed Defendant Dale, at least partially, to be dressed differently in a second set clothing when arrested. This positing of two (2) sets of clothes, one worn by the robber and the other being that of the Defendant is wholly consistent with a defense that while the victim may have been robbed, it was perpetrated by someone other than Defendant Dale, who at such a time was elsewhere.

Contrary to Defendant Dale's arguments that the same was in a largely unspecified manner problematic for the defense and something his trial lawyer should have opposed, the patent discrepancy between the long sleeve t-shirt (Commonwealth's Exhibit C-5) the prosecution per such a stipulation (Commonwealth's Exhibit C-7) introduced and the hooded sweatshirt its victim insistently maintained the gun brandishing robber was wearing on several appreciable levels for those reasons described above can certainly be seen as beneficial to his cause. *See* Petitioner's Response to "No Merit Letter," p. 11.

The Defendant's attack on his trial attorney's stewardship as to the stipulated testimony of Detective Herron (Commonwealth's Exhibit C-7) and the related introduction of the long sleeve t-shirt (Commonwealth's Exhibit C-5) is failing. Even assuming this error assignment finds any needed support in the instant record, has the requisite merit, and Defendant Dale

57

suffered the necessary prejudice, this challenged course of action certainly falls within the broad tactical and strategic decision making discretion afforded a defendant's lawyer and thus, cannot sustain a demand for collateral remedy. *Commonwealth v. Thomas supra* 560 Pa. at 255-57, 744 A.2d at 716-17. *See also Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa.Super. 2014) (A failure to satisfy any prong of the *Pierce* standard requires a PCRA claim's rejection.) Furthermore, it is immaterial that the strategy of defense counsel was unsuccessful as long as the tactical decisions of a defendant's attorney may be seen as reasonably undertaken to effectuate a defendant's interests. *Commonwealth v. Mickens supra* 409 Pa.Super. at 277, 597 A.2d at 1202. *See also Commonwealth v. Speight supra* 544 Pa. at 461, 677 A.2d at 322. (An examination of the case record with benefit of hindsight is not the collateral review standard, but whether the questioned decisions of defense counsel had any reasoned basis to benefit the defendant.)

Defendant Dale further contends by this appellate complaint that Attorney Kramer was professionally incompetent for failing to object to allegedly prejudicial remarks and/or misstatements of evidence purportedly made by the Commonwealth's attorney.[43] *See* Statement of Matters Complained, No. 8. The Defendant previously maintained that his trial counsel should have objected to statements made during the prosecution's summation where the Assistant District Attorney made comments alluding to the theory that the Defendant's wife, Ms. Jenkins, was the unknown female in the motor vehicle during the robbery and a reference that Ms. Jenkins hated the police. *See* Defendant's Petition, pp. 25-27. *See also* Petitioner's

---

[43] Similar to the vast majority of this error assignment's contentions, the generalization of this averment is so wide-ranging it could be seen to include almost any of the Assistant District Attorney's comments through trial as well as the Commonwealth's closing argument. *See* Statement of Complaints, No. 8. A review of the Defendant's petition and response to his collateral attorney's "No Merit Letter" are again needed in combination with this broadly stated appellate complaint to discern that which it advances on appeal. *See* Defendant's Petition, pp. 25-27 and Petitioner's Response to "No Merit Letter," pp. 19-21. Assuming this complaint on appeal is adequately alleged, it should for purposes of appellate review be limited to the collateral challenges discussed above. Pa.R.A.P. 1926(b)(vii). *See also Commonwealth v. Mann supra* 820 A.2d at 794 and *Commonwealth v. Cannon supra* 954 A.2d at 1228.

Response to "No Merit Letter," pp. 19-21. Despite Defendant Dale's assertions, a review of the Commonwealth's summation reveals that he is at least partially mistaken in regard to the prosecutor's comments, trial counsel did object to the eliciting of the referenced testimony, and his attorney was justified in refraining from once more objecting during the Assistant District Attorney's closing argument.

The Pennsylvania Superior Court has held that comments made during a closing argument " .... must be considered in the context of the entire summation." *Commonwealth v. Johnson*, 719 A.2d 778, 790 (Pa.Super. 1998), *appeal denied*, 559 Pa. 689, 739 A.2d 1056 (1999) (Emphasis added). *See also Commonwealth v. Ligons*, 565 Pa. 417, 430, 773 A.2d 1231, 1238 (2001) and *Commonwealth v. Brown*, 911 A.2d 576, 579 (Pa.Super. 2006) *citing Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa.Super. 2006) *quoting Commonwealth v. Correa*, 444 Pa.Super. 621, 624, 664 A.2d 607, 609 (1995). The Superior Court in *Commonwealth v. Raffensberger*, 291 Pa.Super. 193, 207, 435 A.2d 864, 870-71 (1981) found that the scope of this contextual review extends even further to include the contents of the entire case. " ... *[A]llegedly prejudicial remarks must be read in the context of the case as a whole*, with a particular view to the evidence presented and reasonable inferences drawn therefrom, in order to determine whether they are indeed prejudicial." *Id*. (Emphasis added). *See Commonwealth v. Boone*, 286 Pa.Super. 384, 398-400, 428 A.2d 1382, 1389-90 (1981) and *generally Commonwealth v. Bullock*, 284 Pa.Super. 601, 426 A.2d 657 (1981).

During the course of closing summations, "[t]he prosecutor is free to argue that the evidence leads to the conclusion of guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence." *Commonwealth v. Chamberlain*, 612 Pa. 107, 153, 30 A.3d 381, 408 (2011) *citing Commonwealth v. Sam*, 535 Pa. 350, 362, 635 A.2d 603, 608 (1993).

59

A new trial will not be considered necessary "[w]here the prosecutor's arguments are supported by the evidence and contain inferences which are reasonably derived therefrom." *Commonwealth v. Chamberlain supra* 612 Pa. at 153, 30 A.3d at 408 *citing Commonwealth v. Bronshtein*, 547 Pa. 460, 485, 691 A.2d 907, 919 (1997). *See also Commonwealth v. LaCava*, 542 Pa. 160, 181, 666 A.2d 221, 231 (1995) and *Commonwealth v. Hardcastle*, 519 Pa. 236, 254, 546 A.2d 1101, 1109 (1988).

Furthermore, "[t]he prosecutor may ... argue to the jury that the evidence establishes the guilt of the defendant and that certain facts in evidence are conclusive of such guilt." *Commonwealth v. Kaufman*, 307 Pa.Super. 63, 71, 452 A.2d 1039, 1043 (1982) *citing Commonwealth v. Oglesby*, 274 Pa.Super. 586, 595, 418 A.2d 561, 565 (1980). During the course of his closing summation, a prosecutor may as well " ... ***attempt to meet the arguments made by defense counsel in his summation.***" *Commonwealth v. Kelly*, 319 Pa.Super. 204, 211, 465 A.2d 1301, 1305 (1983) (Emphasis added) *citing Commonwealth v. Van Cliff*, 483 Pa. 576, 584, 397 A.2d 1173, 1177 (1979). *See also Commonwealth v. Robinson supra* 583 Pa. at 383, 877 A.2d at 448 *citing Commonwealth v. Trivigno*, 561 Pa. 232, 244, 750 A.2d 243, 249 (2000). *See also Commonwealth v. Hardcastle supra* 519 Pa. at 254, 546 A.2d at 1109 *quoting Commonwealth v. Barren*, 501 Pa. 493, 498, 462 A.2d 233, 235 (1983).

In a closing argument, " ... it is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses ... ;" however, an Assistant District Attorney may " ... summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt." *Commonwealth v. Thomas*, 618 Pa. 70, 54 A.3d 332, 338 (2012) *citing Commonwealth v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 307 (2011) and *Commonwealth v. Chamberlain supra*

612 Pa. at 152, 30 A.3d at 408. The accepted goal of the prosecutor's closing summation is to " … present the facts in a manner that will lead the jury to a dispassionate and objective evaluation of those facts and will produce a judgment warranted by the evidence." *Commonwealth v. Turner*, 390 Pa.Super. 216, 222, 568 A.2d 622, 625 (1989) *citing Commonwealth v. Davis*, 363 Pa.Super. 562, 583, 526 A.2d 1205, 1216 (1987), *allocatur denied*, 518 Pa. 624, 541 A.2d 1135 (1988).

A Commonwealth's attorney will not be found to have advocated impermissibly and hence committed "reversible error" during his closing " … unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Nicholson*, 308 Pa.Super. 370, 384, 454 A.2d 581, 588 (1982) *quoting Commonwealth v. McNeal*, 456 Pa. 394, 400, 319 A.2d 669, 673 (1974). *See also Commonwealth v. Boone*, 287 Pa.Super. 1, 6, 428 A.2d 1382, 1389 (1981) and *Commonwealth v. Ligons supra* 565 Pa. at 430, 773 A.2d at 1238 *citing Commonwealth v. Morales*, 549 Pa. 400, 423, 701 A.2d 516, 527-28 (1997). *See also Commonwealth v. Turner supra* 390 Pa.Super. at 223, 568 A.2d at 625 (Referred to in *Turner* as the "unavoidable prejudice test"). "Whether a reversal of judgment is required depends on whether the remarks made by the prosecutor are of such a nature that they would seriously threaten the jury's objectivity and deprive the accused of a fair trial." *Commonwealth v. Gruff*, 822 A.2d 773, 782 (Pa.Super. 2003) *quoting Commonwealth v. Carter*, 537 Pa. 233, 264, 643 A.2d 61, 76 (1994). The court in *Commonwealth v. Guilford* relatedly held that "[a] new trial is not mandated every time a prosecutor makes an intemperate or improper remark." *Commonwealth v. Guilford*, 861 A.2d

365, 371 (Pa.Super. 2004). *See also Commonwealth v. Ervin*, 766 A.2d 859, 864 (Pa.Super. 2000).

The decision as to the prejudicial quality of the statements by the prosecution offered in summation is for the trial judge. *Commonwealth v. Williams*, 289 Pa.Super. 388, 393, 433 A.2d 505, 508 (1981) *citing Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975). Moreover, " ... the remedy to be applied in each case is within the discretion of the trial judge." *Id. See also Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740, 741 (1971).

To properly address Defendant Dale's present error assignment, an examination of not only material testimonial evidence, but also of defense counsel's closing argument and the Assistant District Attorney's summation must be undertaken. *Commonwealth v. Raffensberger supra* 291 Pa.Super. at 207, 435 A.2d at 870-71 and *Commonwealth v. Johnson supra* 719 A.2d at 790.

Throughout the trial, the prosecutor and defense counsel both inquired of the witnesses a description of a female passenger in the robbers' mini van. N.T. 7/13/10, pp. 170, 197, 229, 233, 281. Similarly, the Assistant District Attorney and defense counsel both questioned Ms. Jenkins about her failure to speak to the police regarding the Defendant's alibi and the reasoning behind her choice to not come forward earlier with such information. N.T. 7/14/10, pp. 18-23, 28. Following both the *Raffensberger* and the *Johnson* courts' directions, the relevant portions of the trial testimony are detailed below. *Commonwealth v. Raffensberger supra* and *Commonwealth v. Johnson supra*.

During the Commonwealth's and the defense's examinations, the victim testified that there was a female passenger in the motor vehicle throughout the course of the robbery. N.T. 7/13/10, pp. 170, 197. On being pressed for a description by the prosecution, the victim relayed

that the female passenger was an African American woman who " ... had a bob cut, leather jacket, light-skinned like a little bit lighter than me, and she stayed in the passenger seat the whole time of the Robbery." N.T. 7/13/10, p. 229. Following this initial description by the victim, Attorney Kramer confirmed the victim's description of the female, including her type of hairstyle. N.T. 7/13/10, p. 233. Subsequently, during his examination of Detective Houghton, Attorney Kramer also inquired as to the victim's past description of the unknown female. N.T. 7/13/10, p. 281.

Later, the Defendant's wife, Ms. Jenkins, testified in support of the Defendant's alibi. N.T. 7/14/10, pp. 10-29. In its examination of Ms. Jenkins, the prosecutor sought a sidebar to preemptively halt any prejudicial statement from emerging during his subsequent line of questioning regarding Ms. Jenkins' hair. N.T. 7/14/10, pp. 23-27. During this sidebar, defense counsel repeatedly objected to the prosecution's forthcoming inquiries maintaining any consideration of Ms. Jenkins hair was irrelevant. N.T. 7/14/10, pp. 24-25. In response, the court explained to counsel that a challenge of relevancy was inadequate to sustain the objection. N.T. 7/14/10, p. 26. The Commonwealth's attorney then continued with his examination as follows:

Mr. Miller:

Ms. Jenkins, just one last question that I have.

Ms. Jenkins:

Okay.

Mr. Miller:

It would be fair to describe your haircut as a bob style haircut, wouldn't it?

Ms. Jenkins:

This?

63

Mr. Miller:

Yes.

Ms. Jenkins:

I wear wigs so I wear different styles …

Mr. Miller:

Okay. Well …

Ms. Jenkins:

… to be honest with you. But this, yes. But I wear different colors.

N.T. 7/14/10, p. 27.

Attorney Kramer also inquired as to Ms. Jenkins' hairstyle after the prosecutor's examination. N.T. 7/14/10, pp. 28-29.

Unquestionably, the Commonwealth's justification for such a line of questioning was to have the jury question the credibility of Ms. Jenkins and simultaneously the Defendant's alibi by indicating that the unknown female passenger in the motor vehicle could likely have been Ms. Jenkins. N.T. 7/14/10, p. 25. Further testimony from Ms. Jenkins supported this theory and the Commonwealth's understandable effort to call into question Ms. Jenkins' testimony as suspicious.

Prior to the Commonwealth's questions concerning Ms. Jenkins' hairstyle, she testified that one (1) of the reasons she felt uncomfortable going to the police station to inform the officers of Defendant Dale's innocence was "I wasn't going to go there and talk to [Detective Houghton] … because I would have probably got locked up also." N.T. 7/14/10, p. 21. As Detective Houghton had previously testified that his investigation of the motor vehicle revealed that the van was jointly owned by Defendant Dale and Ms. Jenkins taken together with the

64

victim's description of the mini van's African American female passenger being a consistent detailing of her, it was a logical and reasonable inference for the Commonwealth's attorney to advance the theory that the unknown female passenger in the motor vehicle was quite possibly Ms. Jenkins. N.T. 7/13/10, pp. 229, 233-34, 265. N.T. 7/14/10, pp. 50-51, 56-57, 76-79. *See also* Commonwealth's Exhibit C-3 – Abstract from Pennsylvania Department of Transportation.

After recognizing this relevant testimonial evidence, a review of the salient portions of the defense counsel's summation and the Assistant District Attorney's closing argument is as well essential to properly examine this assignment of error.

The material portion of Mr. Kramer's closing statements is that below:

> ... The second description, front passenger, black female, dark skin, straight black hair cut in bobby style, black leather jacket with epaulets on right shoulder, white or tan in color hoodie under jacket, between 19 to 20 years old. ...

> ... And regarding the alibi, the Commonwealth is going to tell you that well, you can't believe her. That's the wife, the mother of the children she has no credibility. She's just here to help him out. She's here to tell the truth. Why? Because she was afraid to tell the truth to the one person that's supposed to protect the community. The police. Why? Because the police went in, they were trying to do their job, they got a little crazy, they made threats against her son. What mother is going to trust an individual that made threats against her own kid? What mother would do such a thing? ... .

N.T. 7/14/10, pp. 50-51, 56-57.

The salient portion of the Assistant District Attorney's closing argument is below:

> ... But I'll tell you somebody who does have a reason to lie. And that's Shavon Jackson – or Jenkins. I'm sorry. The defense's alibi witness, I guess. And Mr. Kramer is right. Typically there's a whole thing we argue that she's got a motive to lie. This is her husband, boyfriend, three kids. Wouldn't want anything bad to happen to him and things like that. That's her basis. But I don't know if I'm going to go with that. She said they were at home watching wrestling 8:00 to 10:15. That's what they do every

65

Friday. I'm actually starting to think that maybe they were together. Maybe they were together that night. You know why I think that? Because we have a female person sitting in the passenger seat of this vehicle that pulled up when Darren Brooks was robbed. And that female was dark skinned, straight black hair in a bob cut, black leather jacket. It goes on and on and on. We have a black female with a bob cut sitting in the passenger seat of the vehicle owned by Louis Dale, also owned by Shavon Johnson – I mean Jenkins. And I asked her. She does say I wear wigs and weaves. I have different hair. But she said the one I'm wearing today is described as a bob cut. So I don't know what to tell you to do with the alibi defense. I don't know which way you're going to go with that. I submit to you that it's not a credible alibi defense. Whether or not you believe she was with him or not during the commission of this crime, she has a bias and a motivation to lie. Not only that, but she even testified yes, I talked to my – Louis Dale's attorney and he said, you know, contact the police about making a statement about the alibi, that you were with him that night. And she testified yes, Detective Houghton contacted me and we set up a meeting so I could go provide this information to him, but I didn't show up because I hate cops. So that's a good reason. I hate cops so who cares what happens to Louis Dale. I have information that could save his skin, but I hate cops so I'm not going there. Forget about it. That's not reasonable. That's not reasonable doubt. That's ridiculous. That's a giant lie. She didn't go to the cops because she's scared. She's going to have to lie to the cops. She's going to have to tell them something that's not true. She's going to have to go there and possibly be identified as this woman who was also involved in this Robbery. And Detective Houghton testified, when I called him back, that he was provided the names, by me, and asked to go check out the alibi and get some information on this. And he said he called, which she said also, and set up a meeting at 12:00. She never called, never showed up, nothing. And Mr. Kramer made a big deal about Detective Houghton not following up, not calling again. But again, you heard him testify. She's the one with the information to provide to me to help a man that I've already arrested because I already compiled enough evidence against him. She should come forward to me and provide me with the information that might change something. I've already completed my investigation. He's been arrested and charged. But she doesn't do that. She doesn't come forward at the prelim. She doesn't come forward when he's arrested to tell anybody. She doesn't come forward until today, July 14. She's got this alibi information and she leaves the sword dangling over Louis Dale's head for that long? She could have come and told that in April and she didn't. All this time making him sweat saying

66

> I do have an alibi for you, Louis. I'm going to come in and tell the Court you were with me, but I'm going to make it dramatic. I'm going to wait until the last day of trial, of your Robbery trial, to tell anybody about it. Maybe that's how she wanted to do it. … .

N.T. 7/14/10, pp. 76-79.

During the course of the victim's testimony, the description of the unknown female passenger in the motor vehicle was emphasized by both the prosecution and the defense. N.T. 7/13/10, pp. 170, 197, 233. Such a description was further revisited during the cross examination of Detective Houghton. N.T. 7/13/10, p. 281. The focus of these inquiries' related not only to the presence of the female passenger, but also a description of this person, *inter alia*, particularly her hairstyle. N.T. 7/13/10, pp. 229, 233, 281. N.T. 7/14/10, p. 27.

Defendant Dale presented an alibi witness, Ms. Jenkins, who closely matched the description of the unknown female passenger and on the day of her testimony wore her hair in a manner that she clearly stated was a bob or bobby cut, the same style as was previously testified to by prior witnesses, including the robbery victim, regarding the mini van's female passenger. N.T. 7/14/10, p. 27.

The Commonwealth's attorney was able to respond to both the evidence brought forth at trial and the related argument presented by defense counsel during his closing summation where Attorney Kramer made mention of the unknown female passenger's description that included a focus on hairstyle. N.T. 7/14/10, pp. 50-51.

The prosecution's comments relating to Ms. Jenkins' contempt for police was also elicited throughout the course of her testimony. N.T. 7/14/10, pp. 18-23, 28. In his examination, the prosecutor inquired as to why Ms. Jenkins had not come forward at an earlier date with this information relating to Defendant Dale's alleged innocence. N.T. 7/14/10, pp. 18-23. Ms. Jenkins detailed that she did not contact the police due to statements purportedly made by police

67

officers to her son during the search of her residence.[44] N.T. 7/14/10, p. 18. Ms. Jenkins testified that when asked by Detective Houghton to visit the police station concerning the Defendant's alibi she elected not to do so because she felt uncomfortable visiting with law enforcement and feared she would be arrested. N.T. 7/14/10, pp. 20-21.

The prosecutor during his closing argument was allowed to " ... argue that the evidence leads to the conclusion of guilt, and is permitted to suggest all favorable and reasonable inferences that arise from the evidence." *Commonwealth v. Chamberlain supra* 612 Pa. at 153, 30 A.3d at 408 *citing Commonwealth v. Sam supra* 535 Pa. at 362, 635 A.2d at 608. On reviewing this appellate complaint in the context of the trial as a whole, the Assistant District Attorney was within the bounds assigned by him in his prosecutorial duties to "argue the evidence," offer reasoned inferences based upon the evidence that had been presented at trial, and attempt to meet the arguments made by defense counsel in his closing. N.T. 7/13/10, pp. 170, 197, 229, 233, 281. N.T. 7/14/10, pp. 21, 27-29, 50-51, 56-57, 76-79. *See also Commonwealth v. Kelly supra* 319 Pa.Super. at 211, 465 A.2d at 1305 *citing Commonwealth v. Van Cliff supra* 483 Pa. at 584, 397 A.2d at 1177.

Further, the prosecution's challenged statements read in the context of the entire case, including both defense counsel's and the prosecutor's examinations and closing summations, clearly reveals these comments were not impermissible. The Commonwealth's attorney argued the evidence that was presented at trial and did not "prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Nicholson supra* 308 Pa.Super. at 384,

---

[44] Detective Houghton testified for a second time in rebuttal immediately following the completion of Ms. Jenkins' testimony. N.T. 7/14/10, p. 30-36. Detective Houghton explained that not only was Ms. Jenkins absent during the search of the residence, but further that he did not have any interaction with any of Ms. Jenkins' children, notably her son, during the search. N.T. 7/14/10, p. 32.

454 A.2d at 588 *quoting Commonwealth v. McNeal supra* 456 Pa. at 400, 319 A.2d at 673.

Hence, Attorney Kramer may not be deemed professionally ineffective for failing to object to

these comments and arguments of the Commonwealth as an attorney need not pursue a meritless

course of action. *Commonwealth v. Sneed supra* 616 Pa. at 33, 45 A.3d at 1115 and

*Commonwealth v. Hutchinson supra* 521 Pa. at 488, 556 A.2d at 372.

Moreover, an examination of the record demonstrates and the Defendant in his original

collateral petition also acknowledged that Attorney Kramer did initially object to the

Commonwealth's line of questioning relating to Ms. Jenkins being the unknown female

passenger. *See* Defendant's Petition, p. 24. Despite Attorney Kramer arguing that the inquiries

were irrelevant, the court did not share his viewpoint. N.T. 7/14/10, pp. 24-27. Although the

Defendant challenged trial counsel's failure to object during the Commonwealth's summation it

is clearly evident that Attorney Kramer did protest the prosecutor's questions and was overruled

by this court. As such a repeated objection of Attorney Kramer was refused by the court, he may

not be deemed ineffective for failing to continuing to oppose a line of questioning and/or

subsequent argument referencing the resulting testimony where he knew the court had not ruled

in his favor and having no reason to believe the court would reverse its prior determination.

*Commonwealth v. Sneed supra* 616 Pa. at 33, 45 A.3d at 1115 and *Commonwealth v. Hutchinson*

*supra* 521 Pa. at 488, 556 A.2d at 372.

Relatedly, Attorney Kramer's decision to not later object during the Commonwealth's

summation can be viewed as a strategic decision to refrain from further drawing the jury's

attention to the possibility that Ms. Jenkins may have been the unknown female in the mini van

used during the robbery and underscoring the resulting inference that her alibi testimony was

thus patently false. As defense counsel is afforded broad discretion to make strategic and tactical

trial determinations, this decision by Attorney Kramer cannot be viewed as his being professionally ineffective in his representation of the Defendant. *See Commonwealth v. Thomas supra* 560 Pa. at 255-57, 744 A.2d at 716-17. *See also Commonwealth v. Speight supra* 544 Pa. at 461, 677 A.2d at 322; *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975; and *Commonwealth v. Mickens supra* 409 Pa.Super. at 277, 597 A.2d at 1202.

Lastly, the Defendant per this assignment of error maintains that Attorney Kramer was professionally incompetent " ... in failing to call alibi witnesses." *See* Statement of Matters Complained, No. 8. Trial counsel most certainly pursued an alibi defense and in support of the same presented the testimony of Ms. Jenkins. N.T. 7/14/10, pp. 10-29. Thus, the only potentially viable ground to possibly sustain this collateral attack is Attorney Kramer's tactical decision not to call additional alibi witnesses.

As part of his comprehensive, advocate's review of Defendant Dale's initial PCRA petition, collateral counsel salient to these considerations, *inter alia*, inspected and reviewed Attorney Kramer's file, including all documentation generated and obtained in trial preparation. *See* "No Merit Letter," p. 2. Appointed counsel relatedly communicated with Attorney Kramer and obtained further information relevant to the Defendant's *pro se* collateral claims. *See* "No Merit Letter," p. 2. There were as well communications between Defendant Dale and his appointed lawyer which included the Defendant providing PCRA counsel with some additionally requested information and/or documentation. *See* "No Merit Letter," p. 2. After reviewing the case record and this supplemental information in combination with his material legal research, appointed counsel per his "No Merit Letter" noted and concluded as follows:

> Trial counsel's failure to call or interview a particular witness does not constitute ineffective assistance of counsel without some showing that said witness' testimony would have been beneficial or helpful in establishing the asserted defense. The Defendant

70

further bears the burden of demonstrating that the testimony of the uncalled witness would have been helpful. Com. v. Shaffer, 763 A.2d 411 (Pa.Super. 2000). To be entitled to relief, a Defendant must establish that the witness existed, the witness was available, counsel knew or should have known of the identity of the witness, the witness would have testified on Defendant's behalf, and the Defendant was prejudiced by the absence of the testimony which would have been offered. Com. v. Sneed, 45 A.3d 1096, 1108-09 (Pa. 2012); Com. v. Dennis, 17 A.3d 297 (Pa. 2011); Com. v. Speight, 677 A.2d 317, 323 (Pa. 1996).

Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. Commonwealth v. Basemore, 744 A.2d 717 (Pa. 2000). Counsel's unreasonable failure to prepare for trial is "an abdication of the minimum performance required of defense counsel." Commonwealth v. Johnson, 866 A.2d 523 (Pa. 2009); Commonwealth v. Brooks, 839 A.2d 245 (Pa. 2003). The duty to investigate may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty may lead to a finding of ineffective assistance of counsel. See Commonwealth v. Perry, 644 A.2d 705, 709 (Pa. 1994); Commonwealth v. Weiss, 606 A.2d 439 (Pa. 1992)(claim has arguable merit where trial counsel fails to call or interview a particular witness).

Where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis to effectuate the client's interest. Com v. Lesko, 15 A.3d 345, 380 (Pa. 2011).

Issue #2 suggests that prior counsel was ineffective for failing to interview and/or otherwise call a pair of alibi witnesses who would have allegedly provided beneficial testimony concerning Defendant's whereabouts at the time of the robbery. The record initially indicates that Defendant's wife, Shavon Jenkins testified in Defendant's case to assist in the alleged alibi [NT, 7/14/10, pp. 10-29]. Isaiah Matthews (stepson of Defendant) and Natasha Dale (sister of Defendant) were also interviewed in advance of trial.[4] Based on this investigation, the undersigned submits that *trial counsel strategically determined that no exculpatory evidence would have been elicited, and it was otherwise not in Defendant's best interest to call said witnesses.* While there did not appear to be an issue regarding the availability of said witnesses, *the use of such testimony, if elicited, would not have been helpful to the Defendant. Counsel clearly had a reasonable basis for not utilizing said witnesses at trial, which rationale concludes that*

71

> *counsel rendered EFFECTIVE assistance.* Counsel further conducted appropriate pre-trial investigation relative to the substance of the purported testimony. For the foregoing reasons, the claims related to inadequate investigation and failure to call witnesses lack merit under the PCRA and accompanying case law.
>
> Footnote 4. Moreover, no witness affidavits containing the purported, beneficial testimony have been provided to the undersigned, a necessary component of any such claim under the PCRA.

"No Merit Letter," pp. 5, 6, and 7, Fn. 4. (Emphasis added).

Defendant Dale's challenges encompassing this appellate complaint averring Attorney Kramer's ineffectiveness fail for these reasons detailed above to satisfy all three (3) of the requisite *Strickland* prongs and his trial counsel thus cannot be deemed ineffective so as to warrant Post Conviction Relief Act remedy. *Commonwealth v. Pierce supra* 515 Pa. at 158, 527 A.2d at 975 *citing Strickland v. Washington supra* 466 U.S. at 687, 104 S.Ct. at 2064. Attorney Kramer clearly questioned the Commonwealth's witnesses with the goal of undermining their credibility and was as well justified in his decision to refrain from objecting to the introduction of the attire, including the long sleeve shirt (Commonwealth's Exhibit C-5). Also, the record clearly establishes that defense counsel did protest the prosecution's eliciting purportedly prejudicial testimony, but that he sensibly chose during the Commonwealth's closing not to once more object to the already allowed testimony's referencing. Finally, despite the Defendant's assertion otherwise, Attorney Kramer did call Ms. Jenkins as an alibi witness and his election to present no such additional witnesses was reasonably based on pre-trial investigation and interviews and grounded in advancing Defendant Dale's interests. These decisions by Attorney Kramer were accordingly reasoned and justified therefore making the Defendant's present appellate complaint meritless.

*VIII. Did the trial court err in dismissing Appellant's first PCRA petition without a hearing?*

*See* Statement of Matters Complained, No. 3.

Per this error assignment on appeal, the Defendant maintains that the court erroneously dismissed his original PCRA petition, absent an evidentiary hearing. *See* Statement of Matters Complained, No. 3. This court to the contrary concluded that no reasoned purpose would be served by any further proceedings as there were no genuine issues of material fact and Defendant Dale thus was not entitled to a hearing prior to the court dismissing his initial collateral petition. *See* Dismissal Notice of Original Collateral Petition and Order dated July 29, 2014. *See also* Order dated December 2, 2014. Moreover, this review of the Defendant's collateral petition and related error assignments on appeal demonstrates that the dismissal of his original collateral petition, without a hearing, was not misguided.

"The right to an evidentiary hearing on a post-conviction petition is not absolute. A PCRA court may decline to hold a hearing if the petition's claim is patently frivolous and without a trace of support in either the record or from other evidence." *Commonwealth v. Payne*, 794 A.2d 902, 906 (Pa.Super. 2002) *citing Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa.Super. 2001). "The controlling factor in determining whether a petition may be dismissed without a hearing is the status of the substantive assertions in the petition." *Id.* at 906 *quoting Commonwealth v. Weddington*, 514 Pa. 46, 50, 522 A.2d 1050, 1052 (1987).

Pennsylvania Rule of Criminal Procedure 907(1) in salient part states:

> If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal ... .

Pa.R.Crim.P. Rule 907(1).

73

"A reviewing court on appeal must examine each of the issues raised ... in light of the record to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing." *Commonwealth v. DuPont*, 860 A.2d 525, 530 (Pa.Super. 2004) *quoting Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa.Super. 2001). *See also Commonwealth v. Springer*, 961 A.2d 1262, 1264 (Pa.Super. 2008).

On July 29, 2014, the court entered its two (2) notices of dismissal as to both Defendant Dale's original and subsequent PCRA petitions.[45] *See* Dismissal Notices and Orders, dated July 29, 2014. The dismissal notice relating to the Defendant's initial collateral petition was entered after a review of appointed collateral counsel's "No Merit Letter" and the court's independent examination of the salient case record. *See* Dismissal Notice of Original Collateral Petition and Order, dated July 29, 2014. *See also* Defendant's Petition. The court resultantly determined that the Defendant's initial collateral petition lacked genuine issues of material fact. *See* Dismissal Notice of Original Collateral Petition and Order, dated July 29, 2014.

Having concluded that Defendant Dale's initial PCRA petition lacked any genuine issues of material fact, the court relatedly determined a hearing was unwarranted. *See Commonwealth v. DuPont supra* 860 A.2d at 530 *quoting Commonwealth v. Jordan supra* 772 A.2d at 1014. The Defendant's appellate complaints relating to the dismissal of his original collateral petition and the averments pertaining to his pre-trial, trial, and collateral counsel's professional incompetence as detailed above reveals that such errors were meritless.

---

[45] This complaint on appeal by its plain terms and the statement of appellate complaints generally does not take issue with the court having dismissed the Defendant's subsequent PCRA petition, absent a hearing. *See* Statement of Matters Complained, No. 3 and Defendant's Subsequent Petition. Hence, this court will offer no discussion regarding its decision to dismiss, without a hearing, Defendant Dale's second collateral pleading. *See generally* Dismissal Notice of Subsequent Petition dated July 29, 2014. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the statement ... are waived." *See also Commonwealth v. Mann supra* 820 A.2d at 794, and *Commonwealth v. Cannon supra* 954 A.2d at 1228.

*IX. Did the Commonwealth's attorney commit instances of misconduct by mis-stating [sic] the evidence, and making highly prejudicial comments and inferences not supported by the evidence at trial?*

*See* Statement of Matters Complained, No. 9.

The Defendant has failed in his final error assignment to detail with even modest particularity those purported instances of prosecutorial misconduct this appellate complaint largely references. There is simply no sufficiently descriptive allegation of what, when, and/or how any purported actions of the Assistant District Attorney constituted improper prosecutorial conduct, despite the bald averment that there were repeated and "highly prejudicial" "instances" of the same. *See* Statement of Matters Complained, No. 9. It is only on a review of Defendant Dale's initial PCRA filing as well as its allegations regarding the Commonwealth's closing argument and his trial attorney not objecting to certain of the prosecution's summation that a modicum of appreciable meaning can be imported to this error assignment. *See* Defendant's Petition, pp. 25-27.

However, when this appellate complaint is viewed in the context of the original collateral pleading it is seemingly nothing more than a generalized repetition of that advanced, in part, via error assignment eight (8) fully discussed above. *See* Statement of Matters Complained, No. 8. ("Was trial counsel ... ineffective ... in failing to object to prejudicial remarks and mis-stating [sic] of the evidence by the Commonwealth's attorney.") If not just a restatement of appellate complaint No. eight (8) warranting no additional comment from the court, this complaint on appeal (No. 9) is by its plain terms so broadly vague as to be meaningless and should thus be deemed waived. Alternatively, this error assignment if in some manner is seen to be a discreet

claim beyond such advanced by Defendant Dale prior,[46] it is not an actionable basis on which Post Conviction Relief Act remedy can be grounded.

Pennsylvania Rule of Appellate Procedure 1925 provides "[t]he Statement [of appellate complaints] shall concisely identify each ruling or error that the appellant intends to challenge with *sufficient detail to identify all pertinent issues* for the judge." Pa.R.A.P. 1925(b)(4)(ii) (Emphasis added.) *See also* Order dated December 23, 2014. As the Superior Court in *Commonwealth v. Mann* previously recognized:

> Pa.R.A.P. 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal. Rule 1925 is thus a crucial component of the appellate process. *Id.* 804 A.2d at 37. 'When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.' *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa.Super. 2011). '*When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.*' *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa.Super. 2003). ... Appellant's claim was not specific enough to allow the trial court the opportunity to address the claim that he is now raising on appeal. ... Accordingly, we find this issue to be waived.

*Commonwealth v. Mann supra* 820 A.2d at 794 (Emphasis added). *See also Commonwealth v. Cannon supra* 954 A.2d at 1228.

Defendant Dale's most generalized assertion that the Commonwealth's attorney committed misconduct in the form of unspecified "prejudicial comments and inferences" is lacking any required detail. Resultantly, this error assignment should be seen for appellate purposes as waived. *Id.*

Furthermore, to be eligible for relief under the Post Conviction Relief Act a defendant must establish by a preponderance of the evidence that the challenged conviction(s) resulted

---

[46] *See* Statement of Matters Complained, No. 8.

from one (1) or more of the Act's specifically delineated errors and/or defects and that such have not been previously litigated and/or waived. 42 Pa.C.S. § 9543(a)(1)(2)(3). *See also Commonwealth v. Banks*, 540 Pa. 143, 148-49, 656 A.2d 467, 469 (1995).

The Defendant's bald assertion that the Commonwealth's attorney committed prosecutorial misconduct is not within the parameters of the PCRA and that generally detailed per this error assignment is not cognizable for remedy under the Post Conviction Relief Act. 42 Pa.C.S. § 9543(a)(2). *Commonwealth v. Lutz*, 788 A.2d 993, 995, Fn. 7 (Pa.Super. 2001) ("A prayer for relief, however, which does not fall within the remedies afforded by the PCRA will not constitute a PCRA petition"). *See also Commonwealth v. Deaner*, 779 A.2d 578, 580 (Pa.Super. 2001) and *Commonwealth v. Tanner*, 410 Pa.Super. 398, 405, 600 A.2d 201, 205 (1991) ("The PCRA limits the *types* of claims that are cognizable. Thus, the petitioner must 'plead and prove by a preponderance of the evidence' that the conviction or sentence resulted from one or more of eight specified circumstances. *See* 42 Pa.C.S. § 9543(a)(2)(i)-(viii)").

Foremost, this complaint on appeal should be seen as waived given its lack of even modest specificity. Alternatively, the averments underpinning this error assignment are simply not grounds on which the Post Conviction Relief Act allows the sought after collateral remedy. Finally, assuming this appellate complaint is not found to have been waived and/or alleges a cognizable basis for relief under the Act, it is simply a generalized restatement of error assignment No. eight (8) requiring no additional comment by this court beyond that already discussed in its addressing and concluding that supposed failure of trial counsel to object to the discernable instances of claimed prosecutorial misconduct is without merit.

## X. CONCLUSION

The Superior Court has held that appellate review of a PCRA's dismissal is conducted:

> [I]n the light most favorable to the prevailing party at the PCRA level. *Commonwealth v. Burkett,* 5 A.3d 1260, 1267 (Pa.Super. 2010). This review is limited to the findings of the PCRA court and the evidence of record. *Id.* We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. *Id.* This Court may affirm a PCRA court's decision on any grounds if the record supports it. *Id.* We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. *Commonwealth v. Carter,* 21 A.3d 680, 682 (Pa.Super. 2011). However, we afford no such deference to its legal conclusions. *Commonwealth v. Paddy,* 609 Pa. 272, 15 A.3d 431, 442 (2011); *Commonwealth v. Reaves,* 592 Pa. 134, 923 A.2d 1119, 1124 (2007). Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874, 886 (2010).

*Commonwealth v. Rykard supra* 55 A.3d at 1183 *quoting Commonwealth v. Ford supra* 44 A.3d at 1194.

As recounted above, this court did not err in its dismissal of Defendant Dale's original and subsequent collateral petitions as there were no genuine issues concerning any material fact, Defendant Dale was not entitled to such post conviction collateral relief, this court lacked jurisdiction relevant to the second collateral petition (Subsequent Petition), and/or any such claim(s) had been waived, and no reasoned purpose was served by further proceedings. This assessment of the Defendant's collateral petition further reveals that his pre-trial, trial, and collateral attorneys cannot be deemed professional ineffective in their stewardship of Defendant Dale's interests. These findings of this court are amply supported by the instant case record, and it committed no related legal error. *Commonwealth v. Rykard supra* 55 A.3d at 1183 *quoting Commonwealth v. Ford supra* 44 A.3d at 1194.

78

For all of these reasons, this court's dismissal, absent a hearing, of Defendant Dale's original and subsequent collateral filings should be affirmed.

BY THE COURT:

_____
Kevin F. Kelly                          J.